**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LEAGUE OF WOMEN VOTERS OF OHIO, and COUNCIL ON AMERICAN-ISLAMIC RELATIONS – NORTHERN OHIO,** | : | |
| | : | **Case No. 2:26-cv-177** |
| **Plaintiffs,** | : | |
| | : | **Judge Michael H. Watson** |
| **v.** | : | |
| | : | **Mag. Judge S. Courter M. Shimeall** |
| **FRANK LAROSE, in his official capacity as Ohio Secretary of State,** | : | |
| **Defendant.** | : | |

---

**DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

---

Pursuant to this Court's order, *see* Doc. No. 47, Defendant Frank LaRose moves for a protective order under Federal Rule of Civil Procedure 26(c). Specifically, Defendant seeks a protective order preventing the disclosure of voter names, contact information, and citizenship information to Plaintiffs. Defendant also seeks a protective order preventing discovery into communications pre-dating the introduction of S.B. 293 in October 2025. Alternatively, Defendant respectfully requests the Court refrain from ruling on this matter until the pending motion to dismiss is resolved and the Court's jurisdiction is determined. A memorandum in support of this motion follows.

Respectfully submitted,

D. ANDREW WILSON
Ohio Attorney General

*/s/ Ann Yackshaw*
ANN YACKSHAW (0090623)*
*Counsel of Record*
JULIE M. PFEIFFER (0069792)
STEPHEN P. TABATOWSKI (0099175)
GREGORY A. RUSTICO (0104103)
TYLER W. BLAIR (0095595)
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 | Fax: 614-728-7592
Ann.Yackshaw@OhioAGO.gov
Julie.Pfeiffer@OhioAGO.gov
Stephen.Tabatowski@OhioAGO.gov
Gregory.Rustico@OhioAGO.gov
Tyler.Blair@OhioAGO.gov

*Counsel for Defendant*

## MEMORANDUM IN SUPPORT

### I. Background

As enacted in S.B. 293, Ohio Rev. Code § 3503.152 requires the Secretary of State to conduct monthly reviews of the statewide voter registration database by consulting data from the Systematic Alien Verification for Entitlements (SAVE) program, as well as data from Ohio's Bureau of Motor Vehicles. If available data from SAVE and BMV confirm that a registered individual is a noncitizen, the Secretary's Office reports the individual to the county board of elections, which shall cancel the person's voter registration. Declaration of Brian Katz, Exhibit 1-A at 8–10; Ohio Rev. Code § 3503.152(B)(1). Individuals removed under this process *must* be investigated for potential criminal violations of Title 35 by the Office's Elections Integrity Unit. Ohio Rev. Code § 3503.152(B)(2). Just over 100 individuals have been removed under this process. Katz Decl. at ¶ 9.

Plaintiffs allege that the removal process, which took effect in March of this year, violates two provisions of the National Voter Registration Act and fails to provide constitutionally sufficient procedural due process. Relevant here, Plaintiffs allege the noncitizen-removal process has a disparate impact on recently naturalized citizens, who Plaintiffs believe will be mistakenly classified as noncitizens and removed. In their complaint, Plaintiffs do not identify ***any*** citizen—recently naturalized or otherwise—improperly removed under the new Ohio process. Although Defendant immediately moved to dismiss the complaint for lack of standing, that motion remains pending. *See generally* Doc. No. 10.

Despite the open question of this Court's subject-matter jurisdiction, discovery commenced. Even though they have not alleged that the removal process has actually injured anyone, Plaintiffs now seek broad swaths of voter data to find someone, somewhere, who was allegedly injured. In short, they are on a fishing expedition for a viable individual plaintiff because they could not locate one (as the law requires) before filing suit. Specifically, Plaintiffs seek the lists of noncitizens

reported to the county boards of elections each month ("county noncitizen lists"), as well as reports generated from the SAVE database ("SAVE reports"). Additionally, Plaintiffs seek communications and documents preceding the enactment of S.B. 293 by several years. Defendant objected to producing these records, and the parties were unable to resolve Defendant's objections.[1]

## II. <u>Law and Argument</u>

This discovery dispute is procedurally unusual. *Plaintiffs* sought the Court's assistance in resolving Defendant's objections to requests for production. Nevertheless, after the parties reached an impasse, the Court directed *Defendant* to file a "discovery-related motion," rather than authorizing Plaintiffs to move to compel the production of documents under Fed. R. Civ. P. 37(a)(2)(B)(iv). Doc. No. 47 at PageID 489. This has the effect of shifting the underlying burden to Defendant. A party seeking to compel the production of documents under Rule 37 bears the initial burden of demonstrating relevance, and the party resisting production then has the burden to demonstrate that the request is "'unduly burdensome or otherwise not discoverable under the Federal Rules.'" *William Powell Co. v. Nat'l Indem. Co.*, 2017 U.S. Dist. LEXIS 55148, at *16 (S.D. Ohio Apr. 11, 2017). On the other hand, the party seeking a protective order under Fed. R. Civ. P. 26(c) must show "'good cause' for protection from one (or more) harms identified in Rule 26(c)(1)(A) 'with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 236 (6th Cir. 2016).

Although Defendant believes that Rule 37(a)(2)(B)(iv) controls here, Defendant cannot file a "discovery-related motion" under Rule 37 resisting the production of documents. Accordingly,

[1] After the parties' discovery conference with the Court, Defendant proposed producing anonymized SAVE reports and county noncitizen lists in order to protect voter confidentiality, and Plaintiffs countered by offering to limit the categories of individuals who may access personal identifying information produced by the Secretary to a more limited group than contemplated by the current Protective Order. The parties were again unable to reach an agreement.

Defendant moves for a protective order under Rule 26(c) but also preserves his argument that Rule 37(a)(2)(B)(iv) applies to the parties' dispute, and any process herein should have proceeded consistent with Rule 37.

Parties may obtain discovery regarding any nonprivileged matter that is "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Courts analyzing proportionality consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* A court must limit the extent of discovery if it determines that the proposed discovery is outside this scope. Fed. R. Civ. P. 26(b)(2)(C)(iii). Further, a court may issue a protective order to protect a party or person "from annoyance, embarrassment, oppression, or undue burden." Fed. R. Civ. P. 26(c)(1).

**A. The burden of producing the voter lists outweighs any benefit.**

Defendant assumes, for purposes of this motion, that Plaintiffs will claim that the SAVE reports and county noncitizen lists are relevant to their claim that S.B. 293 "disproportionately sweeps in naturalized citizens because of the manner in which Defendant identifies potential noncitizens through BMV and SAVE data." Joint Discovery Submission, Exhibit 2 at 3. Even if Plaintiffs were correct as to relevance, the burden on the Secretary's Office and the listed voters outweighs any benefit of disclosing the requested lists. Defendant addresses each voter list in turn.

***The SAVE reports.*** Plaintiffs' requests for the SAVE reports are overly broad and unduly burdensome in light of their minimal importance in resolving the issues in this case. Because the SAVE reports do not list the individuals actually removed under the challenged process, they are only tangentially relevant to Plaintiffs' claims that naturalized citizens are disproportionately

targeted. The Secretary's Office uses the SAVE report as the first step in the removal process. Katz Decl., Ex. 1-A at 8–10. The Office uploads the statewide voter registration database to SAVE each month, and SAVE generates a report listing available citizenship data for each of Ohio's 8 million registered voters. For those individuals classified as noncitizens in SAVE, an individualized review of documents from the BMV follows. *Id.* Only then does the Office create the removal list.[2] *Id.* The SAVE reports therefore will not show whether the removal process disproportionately targets recently naturalized citizens and are minimally relevant.

Against the SAVE reports' scant relevance, their disclosure would impose immense burdens on Ohio's registered voters, as well as the Secretary's Office. Make no mistake: the SAVE reports contain confidential information for *all* 8 million registered voters in this State. The reports include each voter's name, their date of birth, the last four digits of their Social Security number, and citizenship information, including the voter's alien number, USCIS number, naturalization number, or citizenship number. Katz Decl., Ex. 1-D. When Ohioans submit their voter registrations to elections officials, they do so with the expectation that their information, including their citizenship information, will remain confidential. *See* Ohio Rev. Code § 3503.13. They do not consent to share this information with private litigants like Plaintiffs simply by registering to vote. So, too, for individuals interacting with the U.S. immigration system. *See* 5 U.S.C. § 552a(b).

The disclosure in discovery of information made confidential by federal and state statutes imposes a burden. *See McGoy v. Ray*, 164 F. App'x 876, 878 (11th Cir. 2006). And that burden is

---

[2] Plaintiffs will undoubtedly contend that the SAVE reports are discoverable because they shed light on the review *process*. But Plaintiffs can elicit discovery on that topic through other methods—interrogatories and deposition testimony—that do not involve divulging confidential information. *Aliotti v. Vessel Senora*, 217 F.R.D. 496, 498 (N.D. Cal. 2003) (denying plaintiff's motion to compel production of defendant's tax returns because less intrusive means, specifically interrogatories, had not been exhausted to limit disclosure of sensitive information).

particularly immense here, where nearly all of the 8 million voters listed in the SAVE report are confirmed citizens,[3] making their confidential information wholly irrelevant to this case. Requiring the disclosure of 8 million voters' confidential information in a case challenging a process that has removed just over 100 registrations is wildly disproportionate to the case's needs. *See Thompson v. Merrill*, No. 2:16-cv-783, 2020 U.S. Dist. LEXIS 265599, at *12–13 (M.D. Ala. Mar. 24, 2020) (denying motion to compel production of thousands of felony-disenfranchisement records to plaintiffs challenging the constitutionality of the felony-disenfranchisement rule).

Requiring the disclosure of the SAVE reports also unduly burdens the Secretary's Office. Such an order would immediately throw the Office into conflict with state and federal confidentiality laws. *See McGoy*, 164 F. App'x at 878 (balancing the need for discovery against the burden on state officials, who would be in violation of state confidentiality laws by disclosing the requested documents). And it would also force the Secretary to violate the confidentiality provisions set forth in the SAVE agreement. *See* Katz Decl. at ¶ 5 & Ex. 1-C. The discovery rules do not require the Secretary's Office and Ohio's 8 million voters to sustain such injuries so that Plaintiffs may receive largely irrelevant information.

***County noncitizen lists.*** Plaintiffs' requests for the county noncitizen lists are overly broad, unduly burdensome, and not proportional to the needs of this case. To begin, the requested documents are not relevant to Plaintiffs' disparate-impact claim under the NVRA because no such claim exists. As argued in Defendant's motion to dismiss, the NVRA does not permit disparate-impact claims. *See* Doc. No. 10 at PageID 109–11. Plaintiffs cannot misread the NVRA to create

---

[3] SAVE cannot confirm the citizenship of some registered voters, and no voter's registration is canceled under Ohio Rev. Code § 3503.152 if the voter's non-citizenship cannot be confirmed by SAVE. Katz Decl. at ¶ 7. These individuals' identities are not relevant to this case, but disclosing them—and their inconclusive SAVE results—will expose these individuals to unwarranted scrutiny and potential suspicions of non-citizenship. *See* Fed. R. Civ. P. 26(c)(1).

relevance where none otherwise exists.[4] But even if a disparate-impact claim existed, the burden on the identified noncitizens and on the Secretary's Office outweighs the lists' relevance to this case.

As set forth above, noncitizens removed under Ohio Rev. Code § 3503.152 *must be* investigated under that statute. Ohio Rev. Code § 3503.152(B)(2). After investigation, the Election Integrity Unit may refer noncitizens for prosecution for registering to vote as a noncitizen and/or voting as a noncitizen, both of which are felony offenses. *See* Ohio Rev. Code §§ 3599.11 (illegal registration), 3599.12 (illegal voting), 3501.055(D) (authority to refer elections crimes for prosecution). Disclosing these noncitizens' names and contact information—even subject to a protective order—risks compromising the integrity of these statutorily mandated criminal investigations. *See Pub. Interest Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 264–68 (4th Cir. 2021) (noting "confidentiality regarding criminal investigations" must be considered before disclosing voter information); *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 579 (4th Cir. 2004) (finding compelling government interest in "protecting the integrity of an ongoing law enforcement investigation"); *Flagg v. City of Detroit*, 268 F.R.D. 279, 309 (E.D. Mich. 2010) (ordering discovery tailored "to avoid interference" with an ongoing investigation). This burden, standing alone, suffices to protect the noncitizen lists from disclosure.

But moreover, disclosing the names and contact information of noncitizens under investigation for election crimes exposes them to "annoyance, embarrassment, oppression, or undue burden." *See* Fed. R. Civ. P. 26(c)(1); *see also* Katz Decl., Ex. 1-E (setting forth the categories of information included in the county noncitizen lists). Because naturalization records are not made

---

[4] Although Defendant believes that the Court can grant a protective order on the record presented, Defendant asks in the alternative that the Court defer any ruling on this motion until the district court concludes that the NVRA embraces the disparate-impact theory. *See* Doc. No. 10 at 15–17 PageID 109–11.

publicly available, *see* 5 U.S.C. § 552(a)(b), Plaintiffs will need to contact these individuals to determine whether—as Plaintiffs suspect—they were naturalized just before their removals. Plaintiffs do not represent these noncitizens; nor do they allege any preexisting relationship with them. None of these individuals are challenging their removals or the process by which the removal occurred as part of this lawsuit (or, to the best of Defendant's knowledge, in any other proceeding). Yet Plaintiffs want to unmask these individuals, gain their confidential information, and attempt to involve them in this litigation without their consent.

Under similar circumstances, courts have refused to order the disclosure of confidential information relating to potential criminal activity. *Thompson* provides a useful illustration. There, two individual plaintiffs challenged Alabama's scheme for the disenfranchisement and re-enfranchisement of individuals convicted of certain crimes. The district court denied plaintiffs' request for the production of the pardon files of every applicant for re-enfranchisement, finding it "grossly disproportional to the needs of the case." *Thompson*, 2020 U.S. Dist. LEXIS 265599 at *12 (citing Fed. R. Civ. P. 26(b)(1)). The plaintiffs' individual claims could not justify "sweeping discovery requests" that included the confidential information in thousands of *other* applicants' files. *Id.* at *12. Here, the disproportionality is much more acute. Plaintiffs do not represent or purport to represent any noncitizens removed from Ohio's voter roll. Yet they seek the name and contact information of every person removed under that process, even though every such person is subject to criminal investigation and none have chosen to participate in this litigation.

The court should grant Defendant an order protecting the SAVE reports and the county noncitizen lists from disclosure.

**B. Pre-S.B. 293 information and documents are outside the scope of discovery because they are not relevant to any claim or defense in this case.**

As noted *supra*, Rule 26(b)(1) limits discovery to that which is "relevant to any party's claim or defense." This provision "directly tether[s]" the scope of discovery to the parties' claims and defenses. *Appalachian Regional Healthcare v. United States Nursing Corp.*, No. 7:14-cv-122, 2017 U.S. Dist. LEXIS 229875, at *4 (E.D. Ky. Sept. 1, 2017). Accordingly, what is discoverable depends upon the claims and defenses "actually asserted in the pleadings." *Helton v. Am. Gen. Life Ins. Co.*, No. 4:09-cv-118, 2011 U.S. Dist. LEXIS 174720, at *11 (W.D. Ky. June 28, 2011).

Here, each claim relates solely to S.B. 293, the only law challenged in this case. Compl. ¶¶ 110–26, Doc. No. 1 at PageID 24–27. Start with Plaintiffs' two NVRA claims. In the first, Plaintiffs allege that S.B. 293 violates Section 8(c) of the NVRA "because it mandates ongoing, regular, and systematic citizenship-based list maintenance throughout the year, including during the 90 days preceding a federal election." *Id.* at ¶ 112, PageID 24. As a result, they say, S.B. 293 violates the 90-day pre-election quiet period set forth in the NVRA. *Id.* at ¶ 113, PageID 24. In their second NVRA claim, Plaintiffs allege S.B. 293 violates the NVRA's mandate that voter list maintenance programs be "uniform" and "nondiscriminatory." *Id.* at ¶¶ 115–17, PageID 25. According to Plaintiffs, this is a result of S.B. 293's "directed use" of "databases or systems known to contain stale or unreliable citizenship data," including the BMV database and SAVE system. *Id.* at ¶¶ 117–18, PageID 25.

Discovery predating the enactment of S.B. 293 is irrelevant to either NVRA claim. Recall that both claims proceed under a conflict-preemption theory. At the outset, "[f]ew areas of fact constitute proper subjects of discovery in cases, such as this one, where conflict and field preemption are at issue." *Rockies Express Pipeline LLC v. Indiana State Natural Resources Comm'n*, No. 1:08-cv-1651, 2010 U.S. Dist. LEXIS 45205, at *6 (S.D. Ind. May 7, 2010). Conflict preemption asks

whether "compliance with both state and federal law is impossible, or where the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 377 (2015); *see also Arizona v. InterTribal Council of Ariz., Inc.*, 570 U.S. 1, 9 (2013). A conflict-preemption claim "turns on the identification of 'actual conflict,'" evidence of which "can include statutory language, regulatory history, and agency commentary." *Morris v. Wyeth, Inc.*, 642 F. Supp. 2d 677, 681 (W.D. Ky. 2009).

The sweeping pre-S.B. 293 discovery Plaintiffs seek is far afield from these types of conflict-preemption evidence. For instance, they request all "[c]ommunications relating or referring to the process or processes in Ohio Rev. Code § 3503.152 or previous iterations thereof . . . since September 1, 2023." Katz Decl., Ex. 1-B at 19. But the processes under *prior* Ohio law have no bearing on whether S.B. 293 *now* requires the Secretary to perform voter list maintenance during the NVRA's 90-day quiet period. Nor do they have any bearing on whether S.B. 293 violates the NVRA's requirement that voter list maintenance programs be "uniform" and "nondiscriminatory." Thus, these communications are simply not relevant to the issues presented by the preemption claims here: ultimately, whether it is impossible to comply with both S.B. 293 and the NVRA.

After all, Plaintiffs allege the uniform-and-nondiscriminatory violation arises from S.B. 293's "directed use" of the SAVE and BMV databases. Compl. ¶ 118, Doc. No. 1 at PageID 25. Before S.B. 293, there was no directed use of the SAVE and BMV databases and, as a result, pre-S.B. 293 discovery cannot be relevant to the preemption analysis. They similarly allege that S.B. 293 "repeals the prior limitation on the Secretary from undertaking" voter list maintenance "during the 90 days preceding a federal election." *Id.* ¶ 80, PageID 17. Even accepting Plaintiffs' interpretation of S.B. 293, pre-enactment processes cannot be relevant to whether Ohio law *now* requires the systematic removal of registered voters during the NVRA's quiet period.

Nor does Plaintiffs' procedural due process claim bring pre-S.B. 293 requests within Rule 26's scope. To prove a procedural due process claim, a plaintiff must show "(1) a protected property or liberty interest; (2) the plaintiff was deprived of this protected interest; and (3) the state provided an inadequate process prior to depriving the plaintiff of this protected interest." *Rice v. Village of Johnstown*, 30 F.4th 584, 596 (6th Cir. 2022) (citation omitted). Plaintiffs allege that S.B. 293 violates procedural due process rights because it requires state officials to "'promptly' cancel [a] voter's registration" based on "reports generated through administrative-database checks using stale data." Compl. ¶ 125, Doc. No. 1 at PageID 26. Plaintiffs say the law does so without providing "prior notice, a meaningful opportunity to contest the determination, or any opportunity to cure erroneous or outdated information before the cancelation occurs." *Id.*

Plaintiffs' due process claim is therefore based on what they believe S.B. 293 to textually require. Information about pre-S.B. 293 practices, then, has no relevance to such a claim. Their procedural due process claim asserts that *S.B. 293*—and not some other earlier law—violates their due process rights. The prior practices under a repealed law do not tend to show that S.B. 293 forecloses notice and an opportunity to cure a registration removal, as Plaintiffs allege. Accordingly, pre-S.B. 293 evidence is also irrelevant to their procedural due process claim. The Court should grant an order protecting any such evidence from disclosure.

## III. Conclusion

For these reasons, the Court should grant Defendant's motion for a protective order. The Court should issue an order protecting the SAVE reports and the county noncitizen lists from disclosure and limiting the timeframe for the requests for production of documents to the introduction of S.B. 293 in October 2025. Alternatively, the Court should refrain from ruling on this matter until the pending motion to dismiss is resolved and the Court's jurisdiction is determined.

Respectfully submitted,

D. ANDREW WILSON
Ohio Attorney General

*/s/ Ann Yackshaw*
ANN YACKSHAW (0090623)*
**Counsel of Record*
JULIE M. PFEIFFER (0069792)
STEPHEN P. TABATOWSKI (0099175)
GREGORY A. RUSTICO (0104103)
TYLER W. BLAIR (0095595)
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 | Fax: 614-728-7592
Ann.Yackshaw@OhioAGO.gov
Julie.Pfeiffer@OhioAGO.gov
Stephen.Tabatowski@OhioAGO.gov
Gregory.Rustico@OhioAGO.gov
Tyler.Blair@OhioAGO.gov

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 9, 2026, the foregoing was filed with the Court. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties for whom counsel has entered an appearance. Parties may access this filing through the Court's system.

*/s/ Ann Yackshaw*
ANN YACKSHAW (0090623)
Assistant Attorney General