# Exhibit 1

## Declaration of Brian Katz and Exhibits

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LEAGUE OF WOMEN VOTERS OF OHIO, and COUNCIL ON AMERICAN-ISLAMIC RELATIONS – NORTHERN OHIO,** | : | |
| *Plaintiffs*, | : | **Case No. 2:26-cv-177** |
| v. | : | **JUDGE MICHAEL H. WATSON** |
| | : | **MAG. JUDGE S. COURTER M. SHIMEALL** |
| **FRANK LAROSE,** | : | |
| *Defendant.* | : | |

**DECLARATION OF BRIAN KATZ**

I, Brian Katz, hereby state that I am over the age of eighteen years and am competent to testify to the following on the basis of personal, firsthand knowledge.

1. I currently serve as Director and Counsel of the Public Integrity Division of the Ohio Secretary of State's Office. I have served as Director of the Public Integrity Division since October 2022. I previously served as the Director of the Campaign Finance Unit in the Elections Division of the Secretary of State's Office, beginning in January 2019.

2. In my capacity as Director of the Public Integrity Division, I lead the office's Campaign Finance Unit, Safe at Home Unit, Election Integrity Unit, National Voter Registration Act efforts, and Board of Voting Systems Examiners administration.

3. I am familiar with the election laws of the State of Ohio and with *League of Women Voters of Ohio, et al., v. LaRose*, No. 2:26-cv-177, which is currently pending before this Court. Through my position as Director and Counsel of the Public Integrity Division, I am familiar with S.B. 293 and Ohio Rev. Code § 3503.152, which are challenged in this case. I am also familiar with the discovery requests served upon the Defendant, Ohio Secretary of State Frank LaRose, and with the Defendant's responses thereto. A true and correct copy of the interrogatory responses served on Plaintiffs are attached hereto as Exhibit A. A true and correct copy of the responses to Plaintiffs' requests for production are attached hereto as Exhibit B.

4. As of the date of this declaration, there are just over 8 million registered voters in Ohio. Up-to-date registration information is available on the Secretary's website: https://data.ohiosos.gov/portal/voter-registration.

5. Since S.B. 293's amendments to Ohio Rev. Code § 3503.152 took effect on March 20, 2026, the Secretary of State's Office has conducted monthly reviews of the statewide voter registration database to identify noncitizens. This process involves uploading information for all 8 million registered voters to the Department of Homeland Security's SAVE system for citizenship verification. The Secretary of State entered into an agreement with the U.S. Department of Homeland Security to allow the Secretary's Office to submit citizenship-verification requests to SAVE. As part of that agreement, the Secretary's Office must protect the confidentiality of the information from the SAVE database and comply with the Privacy Act of 1974. A true and accurate copy of the agreement between the U.S. Department of Homeland Security and the Secretary of State's Office is attached hereto as Exhibit C.

6. Based on available information, SAVE makes a determination of citizenship for each registered voter. The Secretary's Office can download a copy of the SAVE report in Excel format including this citizenship information. A copy of the template SAVE report is attached hereto as Exhibit D. The template report shows the categories of information that are included in the report.

7. There are individuals for whom the SAVE system has not been able to make a conclusive citizenship determination. Under Ohio Rev. Code § 3503.152, the Secretary's Office does not remove individuals merely because their citizenship or non-citizenship status cannot be confirmed by SAVE.

8. After downloading the SAVE report, the Secretary's Office conducts an individualized review of any available documents from the Bureau of Motor Vehicles. If the available information from SAVE and BMV establishes an individual's non-citizenship, that individual is reported to the county board of elections for removal under Ohio Rev. Code § 3503.152. A copy of a template noncitizen report sent to the county boards of elections is attached hereto as Exhibit E. The template report shows the categories of information that are included in the report.

9. Since March 20, 2026, just over 100 individuals' voter registrations have been canceled under Ohio Rev. Code § 3503.152.

I declare under the penalty of perjury that the foregoing is true and correct.

FURTHER DECLARANT SAYETH NAUGHT.



BRIAN KATZ

October 9, 2026

# Exhibit A

## Defendant's Interrogatory Responses

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **LEAGUE OF WOMEN VOTERS OF OHIO, and COUNCIL ON AMERICAN-ISLAMIC RELATIONS – NORTHERN OHIO,** | : | **Case No. 2:26-cv-00177** |
| **Plaintiffs,** | : | **Judge Michael H. Watson** |
| **v.** | : | **Mag. Judge S. Courter M. Shimeall** |
| **FRANK LAROSE, in his official capacity as Ohio Secretary of State,** | : | |
| **Defendant.** | : | |

**DEFENDANT'S RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES**

Pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure, Defendant Frank LaRose answers Plaintiffs' First Set of Interrogatories as follows.

**PRELIMINARY STATEMENTS**

1. Defendant has responded to the Interrogatories as he interprets and understands them. If Plaintiffs subsequently assert an interpretation of any interrogatory that differs from Defendant's understanding, Defendant reserves the right to supplement or amend their objections or responses.

2. These Responses are based upon information currently known to Defendant and are provided without prejudice to Defendant's right to produce or rely on any subsequently discovered facts, contentions, or documents that Defendant may later learn of, recall, or discover. The Responses are based upon Defendant's: (a) reasonable search of facilities and files that could reasonably be expected to contain responsive information; and (b) inquiries of staff or

representatives who could reasonably be expected to possess responsive information.

3. Defendant reserves the right to continue and complete his investigation and discovery of the facts, and to rely at trial or in other proceedings on documents and information in addition to the information provided herein, regardless of whether such information is newly discovered or newly in existence.

4. Defendant reserves the right to revise, amend, correct, supplement, modify or clarify his objections and responses in accordance with the Federal Rules.

5. These Responses are not an admission by Defendant either that any interrogatory or any response thereto is relevant to, or admissible as evidence in, any trial or other proceeding. All objections as to privilege, immunity, relevance, authenticity, or admissibility of any information or documents referred to in this document or produced in response to any interrogatory are expressly reserved.

## GENERAL OBJECTIONS

Defendant makes the following general objections, which apply to each interrogatory regardless of whether they are expressly incorporated into the specific objections below:

1. Defendant objects to each and every interrogatory to the extent it seeks to impose any requirements or obligations on Defendant different from the Federal Rules of Civil Procedure, the Local Rules, any agreement of the parties, or any other statute, rule, or order of this Court.

2. Defendant objects to the Interrogatories to the extent they are overly broad, unduly burdensome, vague, duplicative, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case.

3. Defendant objects to each and every interrogatory to the extent that it lacks particularity and seeks information on or production of "any" or "all" materials responsive to a

particular description where the production of "any" or "all" such information or materials is not relevant to any claim or defense of any party or to the subject matter involved in this action and/or where the search for, collection of, or production of all such information or materials would be unduly burdensome. Defendant will conduct a diligent, good-faith search for information or materials responsive to the interrogatories within the requirements of applicable law.

4. Defendant objects to each and every interrogatory that makes requests for information on "any" or "all" materials or communications "regarding" a particular topic, because identifying and collecting all materials containing any reference or relationship to a particular topic is unduly burdensome and disproportionate to the needs of the case.

5. Defendant objects to each and every interrogatory to the extent that it seeks information or materials protected by the attorney-client privilege, the work-product doctrine, legislative privilege, the joint-defense or common-interest privilege, or any other applicable privilege or immunity, including the First Amendment. *Int'l Action Ctr. v. United States*, 207 F.R.D. 1, 3 (D.D.C. 2002); *Wyoming v. U.S. Dep't of Agric.*, 208 F.R.D. 449, 454-55 (D.D.C. 2002). Inadvertent disclosure of any such document shall not constitute a waiver of any privilege or any other ground for objection to discovery with respect to such document, the subject matter thereof, or other documents, and shall not waive the right of Defendant to object to the use of any such documents or information contained therein in this action or in any other proceeding. Nothing in these Responses is intended to be, or should be construed as, a waiver of any privilege.

6. Defendant objects to each and every interrogatory to the extent that it seeks information or materials that are not relevant to the claims made concerning Ohio Rev. Code § 3503.152. Fed. R. Civ. P. 26(b)(1).

7. Defendant objects to each and every interrogatory to the extent that it seeks

information or materials from any time period that is not relevant to the claims or defenses of any party in this action and are thus beyond the permissible scope of discovery as provided by the Federal Rules.

8. Defendant objects to each and every interrogatory to the extent that responding to it would cause annoyance, harassment, embarrassment, oppression, or undue burden, delay, or expense.

9. Defendant objects to each and every interrogatory to the extent that it calls for legal conclusions.

10. Defendant objects to these Interrogatories to the extent that they seek information not in Defendant's possession, custody, or control.

11. Defendant objects to the Interrogatories to the extent that they seek information that is publicly available; already in Plaintiffs' possession; equally available, or more available, to Plaintiffs; or in the possession or control of third parties.

12. Defendant objects to each and every interrogatory to the extent that it seeks to require Defendant to search for and produce electronic media or any form of electronic media that is currently inaccessible, not reasonably accessible, stored in a form in which it is not ordinarily maintained or reasonably usable, unreasonably voluminous, or otherwise would be burdensome to search or review.

13. Defendant objects to the Interrogatories to the extent they are confusing, ambiguous, or vague.

14. Defendant expressly reserves all objections as to competency, relevancy, materiality, and admissibility of the answers contained herein and any objections to future discovery requests.

15. Defendant expressly reserves the right to alter, amend, revise, and/or supplement these responses. No response shall be construed as a waiver of any further objection.

**OBJECTIONS TO DEFINITIONS**

1. Defendant objects to the definitions of "You" and "your" as overly broad and unduly burdensome because they include all subdivisions and agents of the Secretary of State's Office. These definitions are overbroad, require Defendant to ascertain the identities of potentially hundreds of individuals, and seek information that is not proportional to the needs of the case.

**2.** Defendant objects to Plaintiffs' definitions of "communication," "document," "item," "review," "query," "match," "identify," "referred," "concerning," and "related to," as overly broad and unduly burdensome to the extent it imposes obligations beyond those required by the Federal Rules of Civil Procedure.

**3.** Defendant objects to the definition of "Statewide Voter Registration Database" insofar as it differs from the statutory definition contained in Ohio Rev. Code § 3503.15.

4. Defendant objects to the definition of "Potential non-U.S. citizen" because it is wholly unrelated to the process described in Ohio Rev. Code § 3503.152(A), the statute at issue here, or to any other process or term used in Title 35 of the Revised Code. Defendant further objects to the extent it imposes obligations beyond those required by the Federal Rules of Civil Procedure.

5. Defendant objects to the definition of "Confirmed non-U.S. citizen" because it is wholly unrelated to the process described in Ohio Rev. Code § 3503.152(A), the statute at issue here, or to any other process or term used in Title 35 of the Revised Code. Defendant further objects to the extent it imposes obligations beyond those required by the Federal Rules of Civil Procedure.

6. Defendant objects to the definition of "cancelled" insofar as it differs from the definition of the term as used in Title 35 of the Revised Code. Defendant further objects to the extent it imposes obligations beyond those required by the Federal Rules of Civil Procedure.

7. Defendant objects to the definition of "reinstated" insofar as it does not correspond to any term or process described in Title 35 of the Revised Code. Defendant further objects to the extent it imposes obligations beyond those required by the Federal Rules of Civil Procedure.

8. Defendant objects to the term "Reliability Concerns" because it requires Defendant to speculate as to which technical or other errors are "known" or "suspected" by Defendant or other parties beyond his control. Defendant further objects to the extent it imposes obligations beyond those required by the Federal Rules of Civil Procedure.

9. Defendant objects to the definitions of "policies, procedures, and training materials" insofar as it purports to include "directives," a term defined by Ohio Rev. Code § 3501.053, as part of the definition. Defendant further objects to the extent it imposes obligations beyond those required by the Federal Rules of Civil Procedure.

10. Defendant objects to the definition of "individualized voter information" insofar as it improperly assumes that Defendant maintains every category of information for registered voters in Ohio. Because this case challenges Ohio Rev. Code § 3503.152(A), which requires monthly reviews of the statewide voter registration database, any information *not* included in the statewide voter registration database under Ohio Rev. Code § 3503.15 is overly broad, unduly burdensome, and not proportional to the needs of this case.

## <u>ANSWERS AND OBJECTIONS TO INTERROGATORIES</u>

**Interrogatory No. 1** Identify and describe each instance upon which You conducted a Review of the Statewide Voter Registration Database from March 17, 2025 to the present for the purpose of identifying Potential non-U.S. citizens, including the date or dates of each review, the databases queried (including but not limited to the Ohio Bureau of Motor Vehicles ("BMV") database and

the federal Department of Homeland Security's Systematic Alien Verification for Entitlements ("SAVE" system)), the criteria or matching rules used, and any written policy or automated process pursuant to which the review was conducted.

**ANSWER:** Defendant incorporates all General Objections and Objections to Definitions as if set forth herein. Defendant further objects to this interrogatory as overly broad, vague, ambiguous, and nonsensical because "Potential non-U.S. citizen" does not correspond to the process described in Ohio Rev. Code § 3503.152, the statute at issue in this case. Defendant further objects to this interrogatory as overly broad, unduly burdensome, and not proportional to the needs of this case because it seeks information about reviews conducted before S.B. 293's revisions to Ohio Rev. Code § 3503.152 took effect on March 20, 2026. This interrogatory is overly broad, unduly burdensome, and not proportional to the needs of this case because it seeks information about databases other than the BMV and SAVE, the two databases identified in Ohio Rev. Code § 3503.152, the statute at issue in this case.

Subject to and without waiving these objections, as required by Ohio Rev. Code § 3503.152, Defendant performed monthly reviews of the SWVRD beginning March 2026. As set forth in response to Interrogatory No. 2, the process involves multiple monthly uploads to SAVE and individualized reviews based on daily data sharing between BMV and Defendant's office. The monthly reviews therefore do not occur on a particular date or dates. Further answering, Defendant will produce the document setting forth the procedures followed by staff members in conducting these reviews.

**Interrogatory No. 2**
Describe in detail the process by which individuals are identified as potential non-U.S. citizens in each Review, including any matching algorithms or criteria used (*i.e.*, specify which fields must be similar or identical for an individual's record to be determined to be a match between the voter registration roll and each other dataset used); any confidence thresholds applied; whether any human review occurred prior to, concurrent with, or after such identification; whether any "Bulk

Uploader" is used to share voter data, and whether such identification was based on a match in the SAVE system, any other federal database (including but not limited to the Social Security Administration's database or U.S. passport data), or BMV data, including whether a match in one source alone is sufficient to result in identification or whether matches in both a state and federal source are required.

**ANSWER:** Defendant incorporates all General Objections and Objections to Definitions as if set forth herein. Defendant further objects to this interrogatory as overly broad, vague, ambiguous, and nonsensical because "Potential non-U.S. citizen" does not correspond to the process described in Ohio Rev. Code § 3503.152, the statute at issue in this case. Defendant further objects to this interrogatory as overly broad, unduly burdensome, and not proportional to the needs of this case because it seeks information about reviews conducted before S.B. 293's revisions to Ohio Rev. Code § 3503.152 took effect on March 20, 2026. This interrogatory is overly broad, unduly burdensome, and not proportional to the needs of this case because it seeks information about databases other than the BMV and SAVE, the two databases identified in Ohio Rev. Code § 3503.152, the statute at issue in this case.

Subject to and without waiving these objections, as required by Ohio Rev. Code § 3503.152, Defendant has conducted monthly reviews of the SWVRD to identify individuals who are not citizens beginning in March 2026. Every month, staff members upload to SAVE a file containing information from the SWVRD in a template provided by the Department of Homeland Security. This template sets forth fields of information included for each voter in the SWVRD, including first name, middle name, last name, date of birth, naturalization number, the last four digits of the individual's social security number, and a custom agency reference number, which connects to the individual's voter record.

Up to a week after an upload to SAVE is completed, staff members are able to download a response report from SAVE. The response report includes codes identifying individuals as U.S.

citizens, non-U.S. citizens, or deceased based on information within the SAVE system. Alternatively, the response report notes when more information about the individual is required to make a determination as to the individual's citizenship.

For the individuals identified in the initial response report as non-citizens, or whose citizenship could not be confirmed, staff members at Defendant's office collect additional information about the individual from the BMV or voter records. This information is collected into a file in a template provided by the Department of Homeland Security and uploaded to SAVE. SAVE then reviews this upload based on information within the SAVE system. Before SAVE designates any individual as a non-citizen during this stage of the review, a manual review of available information is conducted. SAVE generates a response report identifying individuals as citizens, non-U.S. citizens, or noting that SAVE could not make a determination as to the individual's citizenship. This response report is then uploaded to a company dashboard within Defendant's office. The dashboard also pulls in information from the BMV, which sends daily and monthly reports to Defendant's office pursuant to agreements between the two agencies.

Staff members at Defendant's office compare the citizenship designation from SAVE to the citizenship designation from BMV. Individualized reviews follow. If an individual is identified by SAVE as a non-citizen, but as a citizen by BMV, staff members perform an individualized review of data and documents submitted to the BMV. If the individual is then confirmed as a non-citizen according to BMV data and documents, the individual is designated for cancellation under Ohio Rev. Code § 3503.152. If an individual is identified by SAVE as a non-citizen, and an individualized review reveals no corresponding BMV record, the individual is designated for cancellation under Ohio Rev. Code § 3503.152. Individuals identified as citizens by SAVE are not designated for cancellation under Ohio Rev. Code § 3503.152, even if there are records designating

that individual as a non-citizen from BMV. Similarly, individuals whose citizenship cannot be determined by SAVE are not designated for cancellation under Ohio Rev. Code § 3503.152. If there is a discrepancy between the citizenship information in SAVE and BMV, staff members perform individualized reviews to attempt to reconcile the discrepancy. Individuals are not designated for cancellation unless and until SAVE confirms that the individual is not a U.S. citizen, and BMV either (1) matches SAVE's determination of non-citizenship or (2) does not have any records for the individual. No other types of cancellations occur under Ohio Rev. Code § 3503.152.

After the reviews described above, staff members create monthly reports for each county listing the individuals identified as non-citizens and upload those reports to SharePoint, an electronic document storage and management application. The county boards of elections are responsible for retrieving those reports and cancelling the registrations of the individuals identified therein under the procedures set forth in the Ohio Election Official Manual. Ohio Rev. Code § 3503.152(B).

**Interrogatory No. 3** Identify any individual flagged as a Potential or Confirmed non-U.S. citizen pursuant to Ohio Code Ann. § 3503.152(A) who was ***not*** referred to a county board of elections for removal, including any reasons for non-referral and all additional information consulted in determining not to so refer such individuals.

**ANSWER:** Defendant incorporates all General Objections and Objections to Definitions as if set forth herein. Defendant further objects to this interrogatory as overly broad, vague, ambiguous, and nonsensical because "Potential non-U.S. citizen" and "Confirmed non-U.S. citizen" do not correspond to the process described in Ohio Rev. Code § 3503.152, the statute at issue in this case. Defendant further objects to this interrogatory as overly broad, unduly burdensome, and not proportional to the needs of this case because it seeks information about

reviews conducted before S.B. 293's revisions to Ohio Rev. Code § 3503.152 took effect on March 20, 2026.

Subject to and without waiving these objections, since Defendant began conducting monthly reviews of the SWVRD pursuant to Ohio Rev. Code § 3503.152, Defendant states that it does not identify "potential" non-citizens. Rather, all persons identified as non-citizens under the process described in Defendant's answer to Interrogatory No. 2 were reported to the county boards of elections for removal.

**Interrogatory No. 4** For the individuals identified as Potential non-U.S. citizens in the review identified in response to Interrogatory No. 1, identify the number later determined to be U.S. citizens, including the number whose voter registrations were therefore never Cancelled and the number whose voter registrations were Cancelled for suspected noncitizen status but then Reinstated.

**ANSWER:** Defendant incorporates all General Objections and Objections to Definitions as if set forth herein. Defendant further objects to this interrogatory as overly broad, vague, ambiguous, and nonsensical because "Potential non-U.S. citizen" does not correspond to the process described in Ohio Rev. Code § 3503.152, the statute at issue in this case. The process described in Ohio Rev. Code § 3503.152(A) does not require Defendant to identify "Potential non-U.S. citizens," and Defendant does not do so. Defendant further objects to this interrogatory as overly broad, unduly burdensome, and not proportional to the needs of this case because it seeks information about reviews conducted before S.B. 293's revisions to Ohio Rev. Code § 3503.152 took effect on March 20, 2026.

Subject to and without waiving these objections, since Defendant began conducting monthly reviews of the SWVRD pursuant to Ohio Rev. Code § 3503.152, Defendant states that it does not identify "potential" non-citizens. Rather, all persons identified as non-citizens under the process described in Defendant's answer to Interrogatory No. 2 were reported to the county boards

of elections for removal. Although no individual so removed was subsequently reinstated, Ohio law plainly requires any voter registration cancelled in error to be restored and treated as though it were never cancelled. Ohio Rev. Code § 3503.21.

**Interrogatory No. 5** For the individuals identified in response to Interrogatory No. 4 whose voter registrations were initially Cancelled, describe the process by which their voter registrations were Reinstated and identify the date or dates on which such reinstatements occurred.

**ANSWER:** Defendant incorporates all General Objections and Objections to Definitions as if set forth herein. Defendant further objects to this interrogatory as overly broad, vague, ambiguous, and nonsensical because "Potential non-U.S. citizen" does not correspond to the process described in Ohio Rev. Code § 3503.152, the statute at issue in this case. The process described in Ohio Rev. Code § 3503.152(A) does not require Defendant to identify "Potential non-U.S. citizens," and Defendant does not do so. Defendant further objects to this interrogatory as overly broad, unduly burdensome, and not proportional to the needs of this case because it seeks information about reviews conducted before S.B. 293's revisions to Ohio Rev. Code § 3503.152 took effect on March 20, 2026.

Subject to and without waiving these objections, see answer to Interrogatory No. 4.

**Interrogatory No. 6** For all individuals identified in response to Interrogatory No. 4, provide the reasons for the erroneous citizenship determination, including but not limited to outdated data on citizenship, missing data on naturalization, and data-matching errors between databases.

**ANSWER:** Defendant incorporates all General Objections and Objections to Definitions as if set forth herein. Defendant further objects to this interrogatory as overly broad, vague, ambiguous, and nonsensical because "Potential non-U.S. citizen" does not correspond to the process described in Ohio Rev. Code § 3503.152, the statute at issue in this case. The process described in Ohio Rev. Code § 3503.152(A) does not require Defendant to identify "Potential non-U.S. citizens," and

Defendant does not do so. Defendant further objects to this interrogatory as overly broad, unduly burdensome, and not proportional to the needs of this case because it seeks information about reviews conducted before S.B. 293's revisions to Ohio Rev. Code § 3503.152 took effect on March 20, 2026.

Subject to and without waiving these objections, see answer to Interrogatory No. 4.

**Interrogatory No. 7** Identify all Reliability Concerns, including limitations, individual errors (with any confidential information redacted as necessary), and error rates of which You are aware, associated with the use of the SAVE system or BMV data for determining citizenship status of persons on the state voter roll.

**ANSWER:** Defendant incorporates all General Objections and Objections to Definitions as if set forth herein. Defendant objects to the definition of "Reliability Concerns" because it requires Defendant to speculate on the errors that may be "known" by other parties. Defendant further objects to this interrogatory as overly broad, unduly burdensome, and not proportional to the needs of this case because it seeks information about reviews conducted before S.B. 293's revisions to Ohio Rev. Code § 3503.152 took effect on March 20, 2026.

Subject to and without waiving these objections, Defendant states that staff members perform individualized reviews of any discrepancies between the citizenship determinations made by SAVE and BMV before designating any individual for cancellation under Ohio Rev. Code § 3503.152. If SAVE designates an individual as a non-citizen, but BMV designates the individual as a citizen, staff members at Defendant's office ask for and receive any available documents and data submitted to BMV. First-time applicants for Ohio credentials must present documentary proof of legal presence in this country to receive a credential, and documentary proof of legal presence establishes either citizenship or non-citizenship. So, many individuals identified by SAVE as non-citizens have submitted documentary proof of citizenship or non-citizenship to BMV. If the

documents and data submitted to BMV establish citizenship, the individual is not designated for cancellation under Ohio Rev. Code § 3503.152.

Further, if the documents submitted to BMV establish the citizenship of an individual identified by SAVE as a non-citizen, staff members at Defendant's office can share citizenship documents with SAVE. SAVE reviews these documents and updates the information within SAVE to reflect the individual's citizenship. Accordingly, on subsequent monthly reviews, SAVE will not identify these individuals as non-citizens.

Further, if SAVE does not have sufficient information to determine the citizenship of an individual, SAVE does not report that individual as a non-citizen. Instead, SAVE reports that no records can be found for the individual or that more information is needed to determine the individual's citizenship. Staff members at Defendant's office obtain and submit to SAVE any additional information—full social security number or immigration numbers—that is available to Defendant. No individual is designated for removal under Ohio Rev. Code § 3503.152 unless and until SAVE affirmatively identifies the individual and confirms the individual's non-citizenship.

The process also accounts for recent changes in citizenship status. Defendant creates a snapshot of the SWVRD at the beginning of each month. By the time Defendant has uploaded the snapshot of the SWVRD into SAVE, processed the response report, and collected additional information for the second upload into SAVE, as described in the answer to Interrogatory No. 2, at least a week has elapsed from the creation of the snapshot. This waiting period ensures that any newly naturalized citizen's information is included in SAVE before the second monthly upload described in Defendant's answer to Interrogatory No. 2 occurs. Further, the process recognizes that newly naturalized citizens may not have up-to-date credentials from BMV. Accordingly, Defendant

does not designate for cancellation any individual confirmed as a citizen by SAVE, even if BMV data or documents show non-citizenship.

**Interrogatory No. 8** Describe all notice provided to individuals identified as Potential or Confirmed non-U.S. citizens on the state voter rolls and accompanying procedures for verifying citizenship given or undertaken prior to cancellation of voter registration, including the timing, method, and contents of such notice and any other accompanying materials or procedures.

**ANSWER:** Defendant incorporates all General Objections and Objections to Definitions as if set forth herein. Defendant further objects to this interrogatory as overly broad, vague, ambiguous, and nonsensical because "Potential non-U.S. citizen" and "Confirmed non-U.S. citizen" do not correspond to the process described in Ohio Rev. Code § 3503.152, the statute at issue in this case. Defendant further objects to this interrogatory as overly broad, unduly burdensome, and not proportional to the needs of this case because it seeks information about reviews conducted before S.B. 293's revisions to Ohio Rev. Code § 3503.152 took effect on March 20, 2026.

Subject to and without waiving these objections, see answer to Interrogatory No. 2. Further answering, individuals identified as non-citizens under the process described in Ohio Rev. Code § 3503.152 receive a notice of cancellation from the board of elections, as well as a letter from Defendant's office. Defendant will provide copies of the notice and the letter.

**Interrogatory No. 9** For the individuals identified as Potential non-U.S. citizens as part of the reviews in Interrogatory No. 1, identify the number Referred to the election integrity unit pursuant to Ohio Rev. Code § 3501.055, the criteria for such referral, and the outcomes of those investigations.

**ANSWER:** Defendant incorporates all General Objections and Objections to Definitions as if set forth herein. Defendant further objects to this interrogatory as overly broad, vague, ambiguous, and nonsensical because "Potential non-U.S. citizen" does not correspond to the process described in Ohio Rev. Code § 3503.152, the statute at issue in this case. Defendant further

objects to this interrogatory as overly broad, unduly burdensome, and not proportional to the needs of this case because it seeks information about reviews conducted before S.B. 293's revisions to Ohio Rev. Code § 3503.152 took effect on March 20, 2026.

This interrogatory is also overly broad, unduly burdensome, and not proportional to the needs of this case because it amounts to a fishing expedition to identify a plaintiff affected by S.B. 293's revisions to Ohio Rev. Code § 3503.152. Plaintiffs' complaint includes no allegation that any person has been incorrectly identified as a noncitizen under S.B. 293's revisions to Ohio Rev. Code § 3503.152. The burden of searching for and providing information related to the individuals referred for investigation therefore exceeds their minimal relevance to the claims as pleaded in Plaintiffs' complaint. Further, the names and identifying information of these individuals are not relevant to the Plaintiffs' claims, which all challenge the *method* by which Ohio Rev. Code § 3503.152 is administered, or to their theory of standing in this case. The fact that Defendant reports individuals to the county boards of elections for removal is not in dispute; it is statutorily required. Plaintiffs can obtain information about the process of reporting these individuals to the county boards of elections through less burdensome means that do not involve disclosing the identity and confidential information of individuals, particularly those individuals who are subsequently referred for investigation under Ohio Rev. Code § 3503.152(B)(2).

Subject to and without waiving these objections, Defendant states that all persons identified as non-citizens under the process described in Ohio Rev. Code § 3503.152(A) are reported to the county boards of elections for removal and referred to the election integrity unit for further investigation. Ohio Rev. Code § 3503.152(B).

As to objections:

D. ANDREW WILSON
Ohio Attorney General

*/s/ Ann Yackshaw*

ANN YACKSHAW (0090623)*
*Counsel of Record*
JULIE M. PFEIFFER (0069792)
STEPHEN P. TABATOWSKI (0099175)
GREGORY A. RUSTICO (0104103)
TYLER W. BLAIR (0095595)
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 | Fax: 614-728-7592
Ann.Yackshaw@OhioAGO.gov
Julie.Pfeiffer@OhioAGO.gov
Stephen.Tabatowski@OhioAGO.gov
Gregory.Rustico@OhioAGO.gov
Tyler.Blair@OhioAGO.gov

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2026, the foregoing was sent by email to counsel of record.

*/s/ Ann Yackshaw*
ANN YACKSHAW (0090623)
Assistant Attorney General

**VERIFICATION**

Pursuant to Federal Rule of Civil Procedure 33 and 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing Responses of Defendant Ohio Secretary of State Frank LaRose to Plaintiffs' First Set of Interrogatories are true and accurate to the best of my knowledge.

Brian Katz
Office of Secretary of State Frank LaRose

# Exhibit B

## Defendant's Responses to the Requests for Production

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LEAGUE OF WOMEN VOTERS OF OHIO, and COUNCIL ON AMERICAN-ISLAMIC RELATIONS – NORTHERN OHIO,** | : | **Case No. 2:26-cv-00177** |
| **Plaintiffs,** | : | **Judge Michael H. Watson** |
| **v.** | : | **Mag. Judge S. Courter M. Shimeall** |
| **FRANK LAROSE, in his official capacity as Ohio Secretary of State,** | : | |
| **Defendant.** | : | |

---

**DEFENDANT'S RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION**

---

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant Frank LaRose responds to Plaintiffs' First Requests for Production of Documents as follows.

These Responses and Objections are limited to the information obtained and reviewed to date and are given without prejudice to Defendant's right to amend or supplement any objection or response after considering information obtained or reviewed in the future. These Responses and Objections should not be interpreted as an admission to the existence of the requested documents. Defendant reserves the right to object to the admissibility of any documents or information produced in response to Plaintiffs' requests. Defendant submits these Responses and Objections without conceding the relevance, materiality, or admissibility of the subject matter of any document or information.

**GENERAL OBJECTIONS**

Defendant makes the following general objections, which apply to each request for

production regardless of whether they are expressly incorporated into the specific objections below:

1. Defendant objects to each and every request for production to the extent it seeks to impose any requirements or obligations on Defendant different from the Federal Rules of Civil Procedure, the Local Rules, any agreement of the parties, or any other statute, rule, or order of this Court.

2. Defendant objects to each and every request for production to the extent it does not describe with reasonable particularity each item or category of items to be inspected as required by Rule 34 of the Federal Rules of Civil Procedure.

3. Defendant objects to each and every request for production to the extent it is overly broad, unduly burdensome, vague, duplicative, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case.

4. Defendant objects to each and every request for production to the extent that it lacks particularity and seeks information on or production of "any" or "all" materials responsive to a particular description where the production of "any" or "all" such information or materials is not relevant to any claim or defense of any party or to the subject matter involved in this action and/or where the search for, collection of, or production of all such information or materials would be unduly burdensome. Defendant will conduct a diligent, good-faith search for information or materials responsive to the requests for production within the requirements of applicable law.

5. Defendant objects to each and every request for production that makes requests for information on "any" or "all" materials or communications "regarding" a particular topic, because identifying and collecting all materials containing any reference or relationship to a particular topic is unduly burdensome and disproportionate to the needs of the case.

6. Defendant objects to each and every request for production to the extent that it seeks information or materials protected by the attorney-client privilege, the work-product doctrine, legislative privilege, the joint-defense or common-interest privilege, or any other applicable privilege or immunity, including the First Amendment. *Int'l Action Ctr. v. United States*, 207 F.R.D. 1, 3 (D.D.C. 2002); *Wyoming v. U.S. Dep't of Agric.*, 208 F.R.D. 449, 454-55 (D.D.C. 2002). Inadvertent disclosure of any such document shall not constitute a waiver of any privilege or any other ground for objection to discovery with respect to such document, the subject matter thereof, or other documents, and shall not waive the right of Defendant to object to the use of any such documents or information contained therein in this action or in any other proceeding. Nothing in these Responses is intended to be, or should be construed as, a waiver of any privilege.

7. Defendant objects to each and every request for production to the extent that it seeks information or materials that are not relevant to the claims made concerning Ohio Rev. Code § 3503.152.

8. Defendant objects to each and every request for production to the extent that it seeks information or materials from any time period that is not relevant to the claims or defenses of any party in this action and are thus beyond the permissible scope of discovery as provided by the Federal Rules.

9. Defendant objects to each and every request for production to the extent that responding to it would cause annoyance, harassment, embarrassment, oppression, or undue burden, delay, or expense.

10. Defendant objects to each and every request for production to the extent that it calls for legal conclusions.

11. Defendant objects to each and every request for production to the extent that it seeks

information not in Defendant's possession, custody, or control.

12. Defendant objects to each and every request for production to the extent that it seeks information that is publicly available; already in Plaintiffs' possession; equally available, or more available, to Plaintiffs; or in the possession or control of third parties.

13. Defendant objects to each and every request for production to the extent that it seeks to require Defendant to search for and produce electronic media or any form of electronic media that is currently inaccessible, not reasonably accessible, stored in a form in which it is not ordinarily maintained or reasonably usable, unreasonably voluminous, or otherwise would be burdensome to search or review.

14. Defendant objects to each and every request for production to the extent it is confusing, ambiguous, or vague.

15. Defendant expressly reserves all objections as to competency, relevancy, materiality, and admissibility of the answers contained herein and any objections to future discovery requests.

16. Defendant expressly reserves the right to alter, amend, revise, and/or supplement these responses. No response shall be construed as a waiver of any further objection.

## OBJECTIONS TO DEFINITIONS

1. Defendant objects to the definitions of "You" and "your" as overly broad and unduly burdensome because they include all subdivisions and agents of the Secretary of State's Office. These definitions are overbroad, require Defendant to ascertain the identities of potentially hundreds of individuals, and seek information that is not proportional to the needs of the case.

**2.** Defendant objects to Plaintiffs' definitions of "document," "Electronically Stored Information," "ESI," "communication," "correspondence," "concerning,"

"reflecting," "regarding," "related to," and "item," as overly broad and unduly burdensome to the extent it imposes obligations beyond those required by the Federal Rules of Civil Procedure.

3. Defendant objects to the definition of "Potential non-U.S. citizen" because it is wholly unrelated to the process described in Ohio Rev. Code § 3503.152(A), the statute at issue here, or to any other process or term used in Title 35 of the Revised Code. Defendant further objects to the extent it imposes obligations beyond those required by the Federal Rules of Civil Procedure.

4. Defendant objects to the definition of "Confirmed non-U.S. citizen" because it is wholly unrelated to the process described in Ohio Rev. Code § 3503.152(A), the statute at issue here, or to any other process or term used in Title 35 of the Revised Code. Defendant further objects to the extent it imposes obligations beyond those required by the Federal Rules of Civil Procedure.

5. Defendant objects to the definitions of "policies, procedures, and training materials" insofar as it purports to include "directives," a term defined by Ohio Rev. Code § 3501.053, as part of the definition. Defendant further objects to the extent it imposes obligations beyond those required by the Federal Rules of Civil Procedure.

## RESPONSES TO REQUESTS FOR PRODUCTION

**Request for Production 1**: Copies of any and all final agreements, including all amendments and supplements thereto, whether formal or informal, between Your office and the federal government, including the United States Department of Homeland Security ("DHS") and its United States Citizenship and Immigration Services ("USCIS") agency, regarding Your office's ability to access the federal Systematic Alien Verification for Entitlements ("SAVE") system and/or any other federal databases, including but not limited to the United States Social Security Administration ("SSA") database, for purposes relating to voter registration list maintenance, and which were made, or in effect at any time, since April 1, 2025. This includes but is not limited to any amendments or supplements to such agreements as a result of SB 293.

**RESPONSE:** Defendant incorporates all General Objections and Objections to Definitions as if set forth herein. Defendant further objects to this Request as overly broad and unduly

burdensome because it requires Defendant to search for and produce documents related to federal databases other than the SAVE system, which is the sole federal database relevant to Plaintiffs' claims in this case. This request is also overly broad, unduly burdensome, and not proportional to the needs of this case because it requires Defendant to make judgments calls as to whether a document constitutes an "informal" agreement.

Subject to and without waiving these objections, see documents produced.

**Request for Production 2**: Communications between Your office and DHS, USCIS, or the United States Department of Justice regarding Your office's ability to access the SAVE system and/or any other federal databases, including but not limited to the SSA database, for purposes relating to voter registration list maintenance since April 1, 2025.

**RESPONSE:** Defendant incorporates all General Objections and Objections to Definitions as if set forth herein. Defendant further objects to this Request as overly broad and unduly burdensome because it requires Defendant to search for and produce documents related to federal databases other than the SAVE system, which is the sole federal database relevant to Plaintiffs' claims in this case. Defendant further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it requires Defendant to search for and produce all communications regarding Defendant's ability to access any federal system for voter registration list maintenance, no matter how tangentially related to Ohio Rev. Code 3503.152 or to the claims in this case.

Subject to and without waiving these objections, see documents produced.

**Request for Production 3**: Documents sufficient to show the process for conducting reviews of the statewide voter registration database for citizenship status by submitting data to and consulting the SAVE system since April 1, 2025, including but not limited to: the output returned from SAVE for each Ohio voter run through the system, the frequency of data sharing from Your office to DHS or USCIS and vice versa, the frequency of reviews of Ohio voter rolls using the SAVE system or of SAVE data to verify information in Ohio voter rolls, what categories of data are submitted, what

portions of Ohio's voter registration database are reviewed by Ohio or federal officials and compared with SAVE data at each stage of the review process (or whether the entirety of Ohio's voter registration database is so reviewed and by whom), which categories of voter registration information Ohio or federal officials utilize to determine citizenship, whether federal or state officials utilize the "Bulk Uploader" feature of the SAVE system, and any other part of the data sharing and review processes.

**RESPONSE:** Defendant incorporates all General Objections and Objections to Definitions as if set forth herein. Defendant objects to this request as unduly vague because it requires Defendant to determine whether a document or set of documents is "sufficient to show" a particular process. Defendant further objects to this request as overly broad, unduly burdensome, and not proportional to the needs of this case because it seeks documents before S.B. 293's revisions to Ohio Rev. Code § 3503.152 took effect on March 20, 2026.

Subject to and without waiving these objections, see documents produced.

**Request for Production 4:** Documents sufficient to show any changes to the processes referenced in Request for Production 3 as a result of, or subsequent to the implementation of, SB 293.

**RESPONSE:** Defendant incorporates all General Objections and Objections to Definitions as if set forth herein. Defendant objects to this request as unduly vague because it requires Defendant to determine whether a document or set of documents is "sufficient to show" a particular process or how that process changed. Defendant further objects to this request as overly broad, unduly burdensome, and not proportional to the needs of this case because it seeks documents before S.B. 293's revisions to Ohio Rev. Code § 3503.152 took effect on March 20, 2026.

Subject to and without waiving these objections, see documents produced.

**Request for Production 5**: All reports that Your office has generated through the SAVE system, or received from federal officials using the SAVE system, in response to queries, or that contain information, about individuals' citizenship status for purposes of voter registration since April 1, 2025.

**RESPONSE:** Defendant incorporates all General Objections and Objections to Definitions as if set forth herein. Defendant further objects to this Request as overly broad and unduly burdensome because it requires Defendant to search for and produce documents from unidentified and unnamed "federal officials" that may "contain" any information about any individual's citizenship status, regardless of whether such documents relate to SAVE or to the statutory process at issue here. Defendant further objects to this request as overly broad, unduly burdensome, and not proportional to the needs of this case because it seeks reports generated through the SAVE system before S.B. 293's revisions to Ohio Rev. Code § 3503.152 took effect on March 20, 2026.

Defendant further objects to this request as overly broad, unduly burdensome, and not proportional to the needs of this case. As set forth in Defendant's answer to Interrogatory 2, Defendant uploads information from the entire SWVRD, which includes 7.9 million registered voters, to SAVE every month. SAVE then generates a response report containing confidential and personal information, including social security numbers, dates of birth, addresses, and other information, for all 7.9 million registered Ohio voters. The burden of reviewing and redacting confidential information for 7.9 million registered voters, and ensuring that Plaintiffs can adequately protect the information produced, far exceeds its relevance to this case.

This request is also overly broad, unduly burdensome, and not proportional to the needs of this case because it amounts to a fishing expedition to identify a plaintiff affected by S.B. 293's revisions to Ohio Rev. Code § 3503.152. Although Plaintiffs' complaint includes no allegation that any person has been incorrectly identified as a noncitizen under S.B. 293's revisions to Ohio Rev. Code § 3503.152, Plaintiffs request a large volume of records to attempt to identify such an individual. Further, the names and identifying information of individuals involved in the process set forth in Ohio Rev. Code § 3503.152 are not relevant to the Plaintiffs' claims, which all challenge

the *method* by which the section is administered, or to their theory of standing in this case. The fact that Defendant reviews information from SAVE is not in dispute. Plaintiffs can obtain information about the process of obtaining information from SAVE through less burdensome means that do not involve disclosing the identity and information of millions of Ohio voters.

**Request for Production 6**: For each of the reports referenced in Request for Production 5, documents showing the individuals reported to county boards of elections as Confirmed or Potential non-U.S. citizens since April 1, 2025.

**RESPONSE:** Defendant incorporates all General Objections and Objections to Definitions as if set forth herein. Defendant further objects to this request as overly broad, vague, ambiguous, and nonsensical because "Confirmed non-U.S. citizen" and "Potential non-U.S. citizen" are not terms that correspond to the process described in Ohio Rev. Code § 3503.152, the statute at issue in this case. Defendant further objects to this request as overly broad, unduly burdensome, and not proportional to the needs of this case because it seeks reports of individuals reported to county boards of elections as non-citizens before S.B. 293's revisions to Ohio Rev. Code § 3503.152 took effect on March 20, 2026.

This request is also overly broad, unduly burdensome, and not proportional to the needs of this case because it amounts to a fishing expedition to identify a plaintiff affected by S.B. 293's revisions to Ohio Rev. Code § 3503.152. Plaintiffs' complaint includes no allegation that any person has been incorrectly identified as a noncitizen under S.B. 293's revisions to Ohio Rev. Code § 3503.152. The burden of searching for, redacting, and producing the requested records therefore exceeds their minimal relevance to the claims as pleaded in Plaintiffs' complaint. Further, the names and identifying information of individuals identified for removal under the process set forth in Ohio Rev. Code § 3503.152 are not relevant to the Plaintiffs' claims, which all challenge the *method* by which the section is administered, or to their theory of standing in this case. The fact

that Defendant reports individuals to the county boards of elections for removal is not in dispute; it is statutorily required. Plaintiffs can obtain information about the process of reporting these individuals to the county boards of elections through less burdensome means that do not involve disclosing the identity and confidential information of individuals, particularly those individuals who are subsequently referred for investigation under Ohio Rev. Code § 3503.152(B)(2).

**Request for Production 7**: Any notices, letters, or communications regarding voter registration that Your office has sent to any individuals who were identified as Confirmed or Potential non-U.S. citizens through a comparison of Ohio's voter registration database, or data therefrom, with the SAVE system, or data therefrom, since April 1, 2025.

**RESPONSE:** Defendant incorporates all General Objections and Objections to Definitions as if set forth herein. Defendant further objects to this request as overly broad, vague, ambiguous, and nonsensical because "Confirmed non-U.S. citizen" and "Potential non-U.S. citizen" are not terms that correspond to the process described in Ohio Rev. Code § 3503.152, the statute at issue in this case. Defendant further objects to this request as overly broad, unduly burdensome, and not proportional to the needs of this case because it seeks notices, letters and communications sent to individuals reported to county boards of elections as non-citizens before S.B. 293's revisions to Ohio Rev. Code § 3503.152 took effect on March 20, 2026.

This request is also overly broad, unduly burdensome, and not proportional to the needs of this case because it amounts to a fishing expedition to identify a plaintiff affected by S.B. 293's revisions to Ohio Rev. Code § 3503.152. Plaintiffs' complaint includes no allegation that any person has been incorrectly identified as a noncitizen under S.B. 293's revisions to Ohio Rev. Code § 3503.152. The burden of searching for, redacting, and producing the requested records therefore exceeds their minimal relevance to the claims as pleaded in Plaintiffs' complaint. Further, the

names and identifying information of individuals identified for removal under the process set forth in Ohio Rev. Code § 3503.152 are not relevant to the Plaintiffs' claims, which all challenge the *method* by which the section is administered, or to their theory of standing in this case. Plaintiffs can obtain information about the process of sending notices or letters to individuals removed under Ohio Rev. Code § 3503.152 through less burdensome means that do not involve disclosing the identity and confidential information of individuals, particularly those individuals who are subsequently referred for investigation under Ohio Rev. Code § 3503.152(B)(2).

Subject to and without waiving these objections, see documents produced.

**Request for Production 8**: Documents identifying any individuals whose information was shared with or submitted to SSA or USCIS or otherwise used to make a query through the SAVE system to check the individual's citizenship status for voter registration list maintenance since April 1, 2025, but whose information was unable to be processed, returned a response with missing fields, or did not return any response or a relevant response.

**RESPONSE:** Defendant incorporates all General Objections and Objections to Definitions as if set forth herein. Defendant further objects to this request as overly broad, unduly burdensome, and not proportional to the needs of this case because it seeks documents identifying individuals whose information was unable to be processed before S.B. 293's revisions to Ohio Rev. Code § 3503.152 took effect on March 20, 2026. This request is also overly broad, unduly burdensome, and not proportional to the needs of this case because it seeks documents relating to individuals who were *not* identified as non-citizens under the process set forth in Ohio Rev. Code § 3503.152 and whose registrations were therefore not cancelled under that statute.

Defendant further objects to this request as overly broad, unduly burdensome, and not proportional to the needs of this case. As set forth in Defendant's answer to Interrogatory 2, Defendant uploads information from the entire SWVRD, which includes 7.9 million registered voters, to SAVE every month. SAVE then generates a response report containing confidential and

personal information, including social security numbers, dates of birth, addresses, and other information, for all 7.9 million registered Ohio voters. The burden of reviewing and redacting confidential information for 7.9 million registered voters, and ensuring that Plaintiffs can adequately protect the information produced, far exceeds its relevance to this case.

This request is also overly broad, unduly burdensome, and not proportional to the needs of this case because it amounts to a fishing expedition to identify a plaintiff affected by S.B. 293's revisions to Ohio Rev. Code § 3503.152. Plaintiffs' complaint includes no allegation that any person has been incorrectly identified as a noncitizen under S.B. 293's revisions to Ohio Rev. Code § 3503.152. The burden of searching for, redacting, and producing the requested records therefore exceeds their minimal relevance to the claims as pleaded in Plaintiffs' complaint. Further, the names and identifying information of individuals whose information could not be processed are not relevant to the Plaintiffs' claims, which all challenge the *method* by which the section is administered, or to their theory of standing in this case. Plaintiffs can obtain information about the method of administering the process under Ohio Rev. Code § 3503.152 for individuals whose information cannot be processed through less burdensome means that do not involve disclosing the identity and confidential information of individuals.

**Request for Production 9**: Any and all agreements, including all amendments and supplements thereto, whether formal or informal, between Your office and the Ohio Bureau of Motor Vehicles ("BMV") regarding Your office's ability to access BMV records for purposes relating to voter registration list maintenance, and which were made or in effect at any time since September 1, 2023. This includes but is not limited to any amendments or supplements to such agreements as a result of, or subsequent to the implementation of, SB 293.

**RESPONSE:** Defendant incorporates all General Objections and Objections to Definitions as if set forth herein. This request is overly broad, unduly burdensome, and not proportional to the needs of this case because it requires Defendant to make judgments calls as to whether a document

constitutes an "informal" agreement. This request is overly broad, unduly burdensome, and not proportional to the needs of this case because it seeks formal and informal agreements with the BMV about matters other than the process set forth in Ohio Rev. Code § 3503.152, the sole statute at issue in this case.

Subject to and without waiving these objections, see documents produced.

**Request for Production 10**: Documents sufficient to show which fields or other categories of voter information BMV has shared with or submitted to your office for the purpose of checking the citizenship status of individuals for voter registration list maintenance since September 1, 2023, including any additional fields or categories included as a result of, or subsequent to the implementation of, SB 293.

**RESPONSE:** Defendant incorporates all General Objections and Objections to Definitions as if set forth herein. Defendant objects to this request as unduly vague because it requires Defendant to determine whether a document or set of documents is "sufficient to show" a particular process. This request is overly broad, unduly burdensome, and not proportional to the needs of this case because it seeks documents unrelated to the process set forth in Ohio Rev. Code § 3503.152, the sole statute at issue in this case.

Subject to and without waiving these objections, see documents produced.

**Request for Production 11:** Documents sufficient to show the process for conducting reviews of the statewide voter registration database for citizenship status by submitting data to and consulting information from the BMV since September 1, 2023. This includes but is not limited to: the frequency of data sharing from Your office to the BMV and vice versa, the frequency of reviews of Ohio voter rolls using the BMV data or of BMV data to verify information in Ohio voter rolls, what categories of data are reviewed by Your office or the BMV for matches or mismatches between BMV data and other data sources, whether such reviews cover the entire voter registration database or just a portion, which categories of voter registration information are utilized to determine citizenship, any changes to the process as a result of SB 293, and any other part of the data sharing and review processes.

**RESPONSE:** Defendant incorporates all General Objections and Objections to Definitions as if set forth herein. Defendant further objects to this request as overly broad, unduly burdensome,

and not proportional to the needs of this case because it seeks documents relating to reviews performed before S.B. 293's revisions to Ohio Rev. Code § 3503.152 took effect on March 20, 2026. This request is also overly broad, unduly burdensome, and not proportional to the needs of this case because it asks for documents relating to reviews performed based on BMV data alone, which does not reflect the process set forth in Ohio Rev. Code § 3503.152. Defendant objects to this request as unduly vague because it requires Defendant to determine whether a document or set of documents is "sufficient to show" a particular process. This request is overly broad, unduly burdensome, and not proportional to the needs of this case because it seeks documents unrelated to the process set forth in Ohio Rev. Code § 3503.152.

Subject to and without waiving these objections, see documents produced.

**Request for Production 12**: Any reports or other documents identifying Confirmed or Potential non-U.S. citizens based wholly or in part on BMV data that Your office has received or generated for the purpose of voter registration list maintenance since September 1, 2023, including but not limited to documents received or generated as a result of, or subsequent to the implementation of, SB 293.

**RESPONSE:** Defendant incorporates all General Objections and Objections to Definitions as if set forth herein. Defendant further objects to this request as overly broad, vague, ambiguous, and nonsensical because "Confirmed non-U.S. citizen" and "Potential non-U.S. citizen" are not terms that correspond to the process described in Ohio Rev. Code § 3503.152, the statute at issue in this case. Defendant further objects to this request as overly broad, unduly burdensome, and not proportional to the needs of this case because it seeks documents identifying individuals identified as non-citizens before S.B. 293's revisions to Ohio Rev. Code § 3503.152 took effect on March 20, 2026. This request is also overly broad, unduly burdensome, and not proportional to the needs of this case because it asks for documents relating to individuals identified as U.S. citizens based

"wholly" on BMV data, which does not reflect the process set forth in Ohio Rev. Code § 3503.152. This request is also overly broad, unduly burdensome, and not proportional to the needs of this case because it seeks reports generated during list maintenance procedures other than those set forth in Ohio Rev. Code § 3503.152.

This request is also overly broad, unduly burdensome, and not proportional to the needs of this case because it amounts to a fishing expedition to identify a plaintiff affected by S.B. 293's revisions to Ohio Rev. Code § 3503.152. Plaintiffs' complaint includes no allegation that any person has been incorrectly identified as a noncitizen under S.B. 293's revisions to Ohio Rev. Code § 3503.152. The burden of searching for, redacting, and producing the requested records therefore exceeds their minimal relevance to the claims as pleaded in Plaintiffs' complaint. Further, the names and identifying information of individuals identified for removal based on BMV data are not relevant to the Plaintiffs' claims, which all challenge the *method* by which Ohio Rev. Code § 3503.152 is administered, or to their theory of standing in this case. Plaintiffs can obtain information about the process of removing individuals based on BMV data through less burdensome means that do not involve disclosing the identity and confidential information of individuals, particularly those individuals who are subsequently referred for investigation under Ohio Rev. Code § 3503.152(B)(2).

**Request for Production 13**: For each of the reports referenced in Request for Production 12, documents showing the individuals reported to county boards of elections as Confirmed or Potential non-U.S. citizens since September 1, 2023.

**RESPONSE:** Defendant incorporates all General Objections and Objections to Definitions as if set forth herein. Defendant further objects to this request as overly broad, vague, ambiguous, and nonsensical because "Confirmed non-U.S. citizen" and "Potential non-U.S. citizen" are not terms that correspond to the process described in Ohio Rev. Code § 3503.152, the statute at issue

in this case. Defendant further objects to this request as overly broad, unduly burdensome, and not proportional to the needs of this case because it seeks documents identifying individuals identified as non-citizens before S.B. 293's revisions to Ohio Rev. Code § 3503.152 took effect on March 20, 2026. This request is also overly broad, unduly burdensome, and not proportional to the needs of this case because it asks for documents relating to individuals identified as U.S. citizens based "wholly" on BMV data, which does not reflect the process set forth in Ohio Rev. Code § 3503.152. This request is also overly broad, unduly burdensome, and not proportional to the needs of this case because it seeks reports generated during list maintenance procedures other than those set forth in Ohio Rev. Code § 3503.152.

This request is also overly broad, unduly burdensome, and not proportional to the needs of this case because it amounts to a fishing expedition to identify a plaintiff affected by S.B. 293's revisions to Ohio Rev. Code § 3503.152. Plaintiffs' complaint includes no allegation that any person has been incorrectly identified as a noncitizen under S.B. 293's revisions to Ohio Rev. Code § 3503.152. The burden of searching for, redacting, and producing the requested records therefore exceeds their minimal relevance to the claims as pleaded in Plaintiffs' complaint. Further, the names and identifying information of individuals identified for removal based on BMV data are not relevant to the Plaintiffs' claims, which all challenge the *method* by which Ohio Rev. Code § 3503.152 is administered, or to their theory of standing in this case. Plaintiffs can obtain information about the process of removing individuals based on BMV data through less burdensome means that do not involve disclosing the identity and confidential information of individuals, particularly those individuals who are subsequently referred for investigation under Ohio Rev. Code § 3503.152(B)(2).

**Request for Production 14**: Any notices, letters, or communications regarding voter registration that Your office has sent to any individuals who were identified as Confirmed or Potential non-U.S. citizens through BMV review since September 1, 2023.

a. For each such notice, documents sufficient to show the date that it was sent.

b. Documents or templates comprising or containing every version of any form of such notice.

c. Draft versions of any such templates.

**RESPONSE:** Defendant incorporates all General Objections and Objections to Definitions as if set forth herein. Defendant further objects to this request as overly broad, vague, ambiguous, and nonsensical because "Confirmed non-U.S. citizen" and "Potential non-U.S. citizen" are not terms that correspond to the process described in Ohio Rev. Code § 3503.152, the statute at issue in this case. Defendant further objects to this request as overly broad, unduly burdensome, and not proportional to the needs of this case because it seeks documents identifying individuals identified as non-citizens before S.B. 293's revisions to Ohio Rev. Code § 3503.152 took effect on March 20, 2026. This request is also overly broad, unduly burdensome, and not proportional to the needs of this case because it asks for documents relating to individuals identified as U.S. citizens based on BMV data, which does not reflect the process set forth in Ohio Rev. Code § 3503.152.

This request is also overly broad, unduly burdensome, and not proportional to the needs of this case because it amounts to a fishing expedition to identify a plaintiff affected by S.B. 293's revisions to Ohio Rev. Code § 3503.152. Plaintiffs' complaint includes no allegation that any person has been incorrectly identified as a noncitizen under S.B. 293's revisions to Ohio Rev. Code § 3503.152. The burden of searching for, redacting, and producing the requested records therefore exceeds their minimal relevance to the claims as pleaded in Plaintiffs' complaint. Further, the names and identifying information of individuals receiving letters or notices after the cancellation of their registrations are not relevant to the Plaintiffs' claims, which all challenge the *method* by

which Ohio Rev. Code § 3503.152 is administered, or to their theory of standing in this case. Plaintiffs can obtain information about the process of notifying individuals about the cancellation of their voter registrations through less burdensome means that do not involve disclosing the identity and confidential information of individuals, particularly those individuals who are subsequently referred for investigation under Ohio Rev. Code § 3503.152(B)(2).

Subject to and without waiving these objections, see documents produced.

**Request for Production 15**: Any lists containing the names and addresses of any person removed from Ohio's voter rolls since September 1, 2023 to the present on the basis that the person was suspected of not being a citizen, confirmed to not be a citizen, and/or had not timely confirmed their citizenship upon request.

**RESPONSE:** Defendant incorporates all General Objections and Objections to Definitions as if set forth herein. Defendant further objects to this request as overly broad, unduly burdensome, and not proportional to the needs of this case because it seeks documents identifying individuals who were removed from Ohio's voter rolls, not because of the statutory process in Ohio Rev. Code § 3503.152, but because the person was "suspected of not being a citizen, confirmed not to be a citizen, and/or had not timely confirmed their citizenship upon request." Because this is a challenge to the process described in Ohio Rev. Code § 3503.152, the burden of searching for and producing responsive documents for individuals removed under some other, ill-defined processes is not proportional to the needs of this case.

This request is also overly broad, unduly burdensome, and not proportional to the needs of this case because it amounts to a fishing expedition to identify a plaintiff affected by S.B. 293's revisions to Ohio Rev. Code § 3503.152. Plaintiffs' complaint includes no allegation that any person has been incorrectly identified as a noncitizen under S.B. 293's revisions to Ohio Rev. Code

§ 3503.152. The burden of searching for, redacting, and producing the requested records therefore exceeds their minimal relevance to the claims as pleaded in Plaintiffs' complaint. Further, the names and identifying information of individuals identified for removal based on non-citizenship are not relevant to the Plaintiffs' claims, which all challenge the *method* by which Ohio Rev. Code § 3503.152 is administered, or to their theory of standing in this case. Plaintiffs can obtain information about the process of removing individuals for non-citizenship through less burdensome means that do not involve disclosing the identity and confidential information of individuals, particularly those individuals who are subsequently referred for investigation under Ohio Rev. Code § 3503.152(B)(2).

**Request for Production 16**: Documents sufficient to show the process or processes Your office uses to determine who is sent a notice indicating possible removal of their voter registration for suspicion of non US-citizenship under the current or any previous iteration of Ohio Rev. Code Ann. § 3503.152 since September 1, 2023, including any changes as a result of, or subsequent to the implementation of, SB 293.

**RESPONSE:** Defendant incorporates all General Objections and Objections to Definitions as if set forth herein. Defendant objects to this request as unduly vague because it requires Defendant to determine whether a document or set of documents is "sufficient to show" a particular process. Defendant further objects to this request as overly broad, unduly burdensome, and not proportional to the needs of this case because it seeks documents before S.B. 293's revisions to Ohio Rev. Code § 3503.152 took effect on March 20, 2026.

Subject to and without waiving these objections, see documents produced.

**Request for Production 17**: Communications relating or referring to the process or processes in Ohio Rev. Code Ann. § 3503.152 or previous iterations thereof between Your office and members of the media, members of the public, county boards of elections, or the Office of the Ohio Attorney General since September 1, 2023, including but not limited to communications related to any changes as a result of SB 293.

**RESPONSE:** Defendant incorporates all General Objections and Objections to Definitions as if set forth herein. Defendant objects to this request as specifically seeking privileged communications between Defendant and the Ohio Attorney General. Defendant further objects to this request as overly broad, unduly burdensome, and not proportional to the needs of this case because it seeks communications about processes in place before S.B. 293's revisions to Ohio Rev. Code § 3503.152 took effect on March 20, 2026. This request is overly broad, unduly burdensome, and not proportional to the needs of this case because it seeks all communications relating to or referring to Ohio Rev. Code § 3503.152, including records that would identify the identities and confidential information of Ohio's registered voters, no matter how tangentially related to the claims in this case. To respond to this request, Defendant would need to search the records of the entire office and conduct individualized reviews to determine whether any content in the record somehow "relates" or "refers" to Ohio Rev. Code § 3503.152, even if they are wholly unrelated to the claims made in this case. The burden of conducting such a document-by-document review far outweighs any potential benefit.

Subject to and without waiving these objections, see documents produced.

**Request for Production 18**: Communications regarding any individual identified as a Confirmed or Potential non-U.S. citizens, notified regarding their suspected non-US citizenship, or removed for suspicion of being a non-US citizen through the review of the voter registration database since September 1, 2023. This includes communications: (a) between Your office and other election officials in Ohio, including county Boards of Elections; (b) internal to Your office; and (c) between Your office and constituents, members of the public, the federal government, media, or any other third-party actors.

**RESPONSE:** Defendant incorporates all General Objections and Objections to Definitions as if set forth herein. Defendant further objects to this request as overly broad, vague, ambiguous, and nonsensical because "Confirmed non-U.S. citizen" and "Potential non-U.S. citizen" are not terms

that correspond to the process described in Ohio Rev. Code § 3503.152, the statute at issue in this case. This request is also overly broad, unduly burdensome, and not proportional to the needs of this case because it seeks communications regarding individuals who received notifications of "suspected non-U.S. citizenship" and communications regarding individuals who were removed for "suspicion of being non-U.S. citizens." Because this is a challenge to the process described in Ohio Rev. Code § 3503.152, the burden of searching for and producing communications relating to individuals removed under some other, ill-defined processes is not proportional to the needs of this case.

This request is also overly broad, unduly burdensome, and not proportional to the needs of this case because it amounts to a fishing expedition to identify a plaintiff affected by S.B. 293's revisions to Ohio Rev. Code § 3503.152. Although Plaintiffs' complaint includes no allegation that any person has been incorrectly identified as a noncitizen under S.B. 293's revisions to Ohio Rev. Code § 3503.152, Plaintiffs request a large volume of records to attempt to identify such an individual. Further, the names and identifying information of individuals involved in the process set forth in Ohio Rev. Code § 3503.152 are not relevant to the Plaintiffs' claims, which all challenge the *method* by which the section is administered, or to their theory of standing in this case.

**Request for Production 19**: Communications regarding SB 293's provisions for comparing citizenship information between Ohio voter rolls and the BMV database or SAVE system received by or sent from your office, including but not limited to communications with: any member of, or employee of, or consultant for the Ohio state legislature; any county board of elections; any part of the federal government; the Office of the Ohio Attorney General; the Ohio BMV; or constituents or other members of the public.

**RESPONSE:** Defendant incorporates all General Objections and Objections to Definitions as if set forth herein. Defendant objects to this request as specifically seeking privileged communications between Defendant and the Ohio Attorney General. Defendant further objects to

this request as overly broad, unduly burdensome, and not proportional to the needs of this case because it seeks all communications regarding S.B. 293, including records that would identify the identities and confidential information of Ohio's registered voters, no matter how tangentially related to the claims in this case. The request is also overly broad and unduly burdensome because it includes communications with ill-defined entities like "any part of the federal government" or "constituents" or "other members of the public." Essentially, the request seeks every communication sent to or received by Defendant's office "regarding" S.B. 293 without limitation.

Subject to and without waiving these objections, see documents produced.

**Request for Production 20**: Communications internal to Your office regarding SB 293's provisions for comparing citizenship information between Ohio voter rolls and the BMV database or SAVE system.

**RESPONSE:** Defendant incorporates all General Objections and Objections to Definitions as if set forth herein. Defendant objects to this request as overly broad, unduly burdensome, and not proportional to the needs of this case because it seeks all communications regarding S.B. 293, including records that would identify the identities and confidential information of Ohio's registered voters, no matter how tangentially related to the claims in this case. To respond to this request, Defendant would need to search the records of the entire office and conduct individualized reviews to determine whether any content in the record somehow "regards" S.B. 293, even if the records are wholly unrelated to the claims made in this case. The burden of conducting such a document-by-document review far outweighs any potential benefit.

Subject to and without waiving these objections, see documents produced.

**Request for Production 21**: Any and all Documents or communications discussing or relating to the development, implementation, revision, rationale, and/or enforcement of SB 293's provisions regarding citizenship data matching with the BMV database or SAVE system, including but not limited to any discussion about compliance with the National Voter Registration Act.

**RESPONSE:** Defendant incorporates all General Objections and Objections to Definitions as if set forth herein. This request is overly broad, unduly burdensome, and not proportional to the needs of this case because it seeks all communications relating to or referring to S.B. 293, including records that would identify the identities and confidential information of Ohio's registered voters, no matter how tangentially related to the claims in this case. To respond to this request, Defendant would need to search the records of the entire office and conduct individualized reviews to determine whether any content in the record somehow "relates" or "refers" to S.B. 293, even if the records are wholly unrelated to the claims made in this case. The burden of conducting such a document-by-document review far outweighs any potential benefit.

Subject to and without waiving these objections, see documents produced.

**Request for Production 22**: All documents Your office has shared since September 1, 2023 with other election officials in Ohio, such as county boards of elections, providing training, guidance, or instructions regarding individuals in the voter registration database identified through BMV, SAVE, or other external data as Confirmed or Potential non-U.S. citizens. This includes, but is not limited to, any guidance, instructions, or training about: (a) communications with such individuals regarding their voter registration, (b) communications with county boards of elections or any other entity regarding changes that should be made to such individuals' voter registration statuses, and c) any changes made to these processes as a result of, or subsequent to the implementation of, SB 293.

**RESPONSE:** Defendant incorporates all General Objections and Objections to Definitions as if set forth herein. Defendant further objects to this request as overly broad, vague, ambiguous, and nonsensical because "Confirmed non-U.S. citizen" and "Potential non-U.S. citizen" are not terms that correspond to the process described in Ohio Rev. Code § 3503.152, the statute at issue in this case. This request is also overly broad, unduly burdensome, and not proportional to the needs of

this case because it requests documents relating to individuals identified as non-citizens through "other external data" unrelated to the process set forth in Ohio Rev. Code § 3503.152.

This request is also overly broad, unduly burdensome, and not proportional to the needs of this case because it amounts to a fishing expedition to identify a plaintiff affected by S.B. 293's revisions to Ohio Rev. Code § 3503.152. Plaintiffs' complaint includes no allegation that any person has been incorrectly identified as a noncitizen under S.B. 293's revisions to Ohio Rev. Code § 3503.152. The burden of searching for, redacting, and producing the requested records therefore exceeds their minimal relevance to the claims as pleaded in Plaintiffs' complaint. Further, the names and identifying information of individuals identified for removal under the process set forth in Ohio Rev. Code § 3503.152 are not relevant to the Plaintiffs' claims, which all challenge the *method* by which the section is administered, or to their theory of standing in this case. The fact that Defendant communicates with the county boards of elections about individuals to be removed under Ohio Rev. Code § 3503.152; it is statutorily required. Plaintiffs can obtain information about the process of reporting these individuals to the county boards of elections through less burdensome means that do not involve disclosing the identity and confidential information of individuals, particularly those individuals who are subsequently referred for investigation under Ohio Rev. Code § 3503.152(B)(2).

Subject to and without waiving these objections, see documents produced.

**Request for Production 23:** All Documents and communications relied upon or referred to while responding to Plaintiffs' First Set of Interrogatories.

**RESPONSE:** Defendant incorporates all General Objections and Objections to Definitions as if set forth herein. Defendant incorporates all objections from his answers and objections to Plaintiffs' first set of interrogatories.

Subject to and without waiving these objections, see documents produced.

Respectfully submitted,

D. ANDREW WILSON
Ohio Attorney General

*/s/ Ann Yackshaw*
ANN YACKSHAW (0090623)*
**Counsel of Record*
JULIE M. PFEIFFER (0069792)
STEPHEN P. TABATOWSKI (0099175)
GREGORY A. RUSTICO (0104103)
TYLER W. BLAIR (0095595)
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 | Fax: 614-728-7592
Ann.Yackshaw@OhioAGO.gov
Julie.Pfeiffer@OhioAGO.gov
Stephen.Tabatowski@OhioAGO.gov
Gregory.Rustico@OhioAGO.gov
Tyler.Blair@OhioAGO.gov

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 17, 2026, the foregoing was emailed to counsel of record.

*/s/ Ann Yackshaw*
ANN YACKSHAW (0090623)
Assistant Attorney General

# Exhibit C

## MOU between Department of Homeland Security and Ohio Secretary of State

# MEMORANDUM OF AGREEMENT

**BETWEEN THE DEPARTMENT OF HOMELAND SECURITY,
U.S. CITIZENSHIP AND IMMIGRATION SERVICES,
AND
OHIO SECRETARY OF STATE, DIVISION OF ELECTIONS
REGARDING PARTICIPATION IN THE SAVE PROGRAM**

## I. PARTIES.

The parties to this Systematic Alien Verification for Entitlements (SAVE) Memorandum of Agreement (MOA) are the Department of Homeland Security, U.S. Citizenship and Immigration Services (DHS-USCIS), and the **Ohio Secretary of State** (User Agency).

## II. AUTHORITY.

The authorities governing this MOA include, but are not limited to, the following:

Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, 100 Stat. 3359, as amended.

Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. No. 104-193, 110 Stat. 2105, as amended.

Section 642 of Div. C, Title VI of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009, as amended (8 U.S.C. §1373).

The Privacy Act of 1974, 5 U.S.C. § 552a, as amended.

Inter-Governmental Cooperation Act, 31 U.S.C. § 6501, et seq, as amended.

The Federal Information Security Management Act of 2014 (Pub. L. 118-283), as amended.

National Voter Registration Act of 1993, 52 U.S.C. § 20501, Pub. L. No. 103-31, 107 Stat. 77, as amended.

Help America Vote Act of 2002, 52 U.S.C. § 20901, Pub. L. No. 107-252, § 303, 116 Stat. 1666, as amended.

Ohio Constitution Article V, Section 1

Ohio Rev. Code §§ 3503.01; 3503.07; 3503.20; 3503.151; 3503.152

Pursuant to the requirements of Office of Management and Budget (OMB) Circular A-97, which establishes the President's guidelines for implementing the Intergovernmental Cooperation Act, 31 U.S.C. Section 6501, et seq., as amended, the User Agency certifies that it cannot procure the naturalized or acquired citizenship information and immigration status information verification services requested pursuant to this MOA reasonably and expeditiously through ordinary business channels.

## III. PURPOSE.

The purpose of this MOA is to establish the terms and conditions for the User Agency's participation in the SAVE program to verify citizenship and immigration status information of noncitizen and naturalized or acquired U.S. citizen registrant or registered voters within User Agency's jurisdiction for **voter registration and voter list maintenance** (benefit) in the State of Ohio.[1]

## IV. RESPONSIBILITIES.

### A. DHS-USCIS agrees to:

(1) Provide to the User Agency in a manner determined by DHS-USCIS, a naturalized or acquired[2] citizenship information and immigration status information verification system under SAVE. SAVE will provide information to the User Agency by initial response (initial verification) to an on-line inquiry by the User Agency; and additional verification procedures where applicable;

(2) Respond to properly submitted verification requests from the User Agency by providing the limited information noted in the **PURPOSE** section above, i.e., a verification case number and U.S. citizenship or immigration status, if any;

(3) Process and respond to properly submitted additional and manual additional verification requests from the User Agency.[3] Response time to additional and manual verification requests may vary depending upon DHS-USCIS workload, available resources, and the registrant or registered voter's specific circumstances;

---

[1] "Participation" in SAVE is as described in the DHS/USCIS/SAVE Privacy Impact Assessment - 006. See Systematic Alien Verification for Entitlements (SAVE) Program | Homeland Security (dhs.gov).

[2] "Acquired citizenship" is defined as citizenship conveyed to children through the naturalization of parents or, under certain circumstances, to foreign-born children of U.S. citizens, provided certain conditions are met. SAVE is only able to verify information that relates to information found in the databases accessed by the system. Accordingly, if an individual with acquired citizenship status has not applied for a Certificate of Citizenship with USCIS, the agency may not have that individual's citizenship status in its databases, and SAVE will not be able to confirm that individual's acquired citizenship status. However, many acquired citizens have received U.S. passports from the Department of State (DOS). If the DOS has provided USCIS with a record of the passport citizenship adjudication and USCIS has updated the individual's alien file, SAVE would be able to find the citizenship record with the individual's Alien number.

[3] "Additional verification" is as described in the DHS/USCIS/SAVE Privacy Impact Assessment - 006. See Systematic Alien Verification for Entitlements (SAVE) Program | Homeland Security (dhs.gov).

(4) Provide to the User Agency operating instructions necessary for the User Agency to designate Users within the purview of the User Agency;

(5) Provide to the User Agency SAVE point of contact information for questions or problems regarding the User Agency's participation in SAVE;

(6) Provide access to training and information regarding the laws, policies, and procedures that govern verifying, safeguarding, using, maintaining, and disclosing certain citizenship and immigration status information;

(7) Provide the User Agency access to additional verification processes. User agency consents to electronic-only submission of all verification requests and additional information, including information submitted for SAVE additional verification (formerly submitted on paper Form G-845 and G-845 Supplement). SAVE will reject non-electronic (i.e., paper) verification requests and information submissions;

(8) Recover no more than its actual costs. SAVE transaction charges are found on the SAVE website. SAVE transaction charges and methods of payment are subject to change upon prior written notification to the User Agency;

(9) Submit invoices to the User Agency's payment office at the address specified in writing by the User Agency, with a copy furnished to the POC. DHS-USCIS may submit invoices when the work is completed or as otherwise authorized. The User Agency's High Level Identifier, tax identification number, and associated dollar amounts will be referenced on all invoices; and

(10) Promptly initiate year-end and closeout adjustments once final costs are known.

**B. User Agency agrees to:**

(1) SAVE System Use.

(a) Provide the information SAVE requires to respond to User Agency requests for verification of naturalized or acquired citizenship information or immigration status information, i.e., one or more citizenship or immigration enumerators (for example, Alien Registration Number/USCIS Number, Certificate of Naturalization Number, or Certificate of Citizenship Number); first and last name; and date of birth.

User Agency must institute additional verification for any registrant or registered voter that does not verify as a naturalized or acquired citizen on initial verification, including in all cases where the User Agency receives any SAVE response other than that of naturalized or acquired citizen. If SAVE does not verify the registrant or registered voter as a naturalized or acquired citizen after conducting the second step additional verification, the User Agency must contact the registrant or registered voter to obtain proof of citizenship in accordance with the provisions of this MOA and Federal and State law;

(b) Ensure that, prior to using SAVE, all User Agency personnel performing verification procedures complete SAVE-required training including: reviewing the SAVE Program Guide, taking the latest version of Web tutorial(s) and maintaining a working knowledge of requirements contained therein and in this MOA, as updated. These instructional materials will address the policies and procedures governing use of the program, including (1) program access, (2) verification procedures, (3) disclosure of information and privacy protections, (4) non-discrimination requirements, and (5) records correction procedures for registrant or registered voters;

(c) Ensure User Agency is provided with, maintains, and uses SAVE User IDs to limit SAVE access to Users that have a need to perform verification procedures and promptly terminate the User's access as requested by SAVE, or if the User separates from the User Agency or otherwise no longer needs SAVE access;

(d) Ensure all Users performing verification procedures only use SAVE with respect to verification of registrant or registered voter naturalized or acquired citizenship information or immigration status information for the specified benefit and comply with all other requirements contained in the SAVE Program Guide, web-based tutorial, and this MOA, and updates to these requirements;

(e) Ensure that all Users performing verification procedures have contact information for the SAVE Program and SAVE monitoring and compliance;

(f) Ensure all Users perform any additional verification procedures SAVE requires and/or the registrant or registered voter requests after the User Agency initiates a verification request;

(g) Use any information provided by DHS-USCIS under this MOA solely for lawful purposes, namely the purpose above of verifying naturalized or acquired citizenship information and immigration status information of noncitizen and naturalized or acquired U.S. citizen registrant or registered voters within User Agency's jurisdiction for determining eligibility for voter registration and to vote in the State of Ohio, and limit use of such information in accordance with this and all other provisions of this MOA;

(h) Comply with the requirements of the Federal Information Security Management Act of 2014 (Pub. L. 118-283) and OMB guidance as applicable to electronic storage, transport of records between agencies, and the internal processing of records received by either agency under the terms of this MOA;

(i) Maintain physical, administrative and technical safeguards for SAVE information and access methods to ensure that it is not used for any other purpose than described in this

MOA and protect its confidentiality, including ensuring that it is not disclosed to any unauthorized person(s) without the prior written consent of DHS-USCIS;[4]

(j) Comply with the Privacy Act of 1974, 5 U.S.C. § 552a, as amended, and other applicable laws, regulations, and policies, including but not limited to all OMB and DHS privacy guidance, in conducting verification procedures pursuant to this MOA, and in safeguarding, maintaining, and disclosing any data provided or received pursuant to the MOA. Information shared as a result of this MOA shall be considered DHS-USCIS information. Responses to third party requests for such information should be consistent with federal law and DHS policy, including but not limited to the provisions of the Freedom of Information Act, 5 U.S.C. § 552;

(k) Comply with federal laws prohibiting discrimination against registrant or registered voters and discriminatory use of the SAVE Program based upon the national origin, color, race, gender, religion, or disability of the registrant or registered voter, including but not limited to the National Voter Registration Act, 52 U.S.C. § 20501 et seq., as amended; the Help America Vote Act, 52 U.S.C. § 20901, as amended; the Voting Rights Act, 52 U.S.C. § 10301 et seq., as amended; and the Civil Rights Act, 52 U.S.C. § 10101 et seq., as amended;

(l) Administer SAVE verification in a manner that does not unlawfully discriminate against registrant or registered voters on any protected basis, including sex, color, race, religion, national origin, disability, or age. In accordance with Section 504 of the Rehabilitation Act of 1973, as amended, and related agency implementing regulations, User Agency will provide reasonable modifications for individuals with disabilities to ensure effective communication;

(m) Comply with the requirements of Executive Order 13166 ("Improving Access to Services for Persons with Limited English Proficiency," 65 Fed. Reg. 50,121 (Aug. 16, 2000)), to take reasonable steps to provide limited English proficiency (LEP) persons interacting with their respective agency with meaningful access to federally conducted programs and activities, including services and benefits, in accordance with LEP guidance set forth by the U.S. Department of Justice and any other applicable authorities;

(n) Provide or cause to be provided to all individuals with respect to whom User Agency or another agency intends to deny registration or proceed with any removal from a voter roll or other action removing or limiting the right to vote, or with civil or criminal enforcement action, because or based in whole or in part upon any information received pursuant to this MOA, with any right to notice and hearing or other due process available under Ohio or other applicable law. For any individual for whom User Agency or another agency intends to deny registration or proceed with removal from a voter roll or other action removing or limiting the right to vote as a result of USCIS information

[4] Each registrant or registered voter seeking access to information regarding themself may do so by submitting a written signed request to DHS-USCIS. Instructions for submitting such requests may be found on the Freedom of Information/Privacy Act page of www.uscis.gov.

received pursuant to this MOA indicating that the individual is not a U.S. citizen or that USCIS was unable to verify the individual's naturalized or acquired U.S. citizenship, User Agency will provide or cause to provide adequate written notice to the individual that citizenship could not be verified and the information necessary to contact DHS-USCIS so that such individuals may obtain a copy of their Naturalization Certificate or Certificate of Citizenship or correct their records in a timely manner, if necessary;

(o) Provide written notice to registrant or registered voters that any information they provide may be subject to verification. User Agency will inform in writing each registrant or registered voter covered by this Agreement that their citizenship or immigration status may be verified against federal immigration records;

(p) Provide all registrant or registered voters who are not verified as citizens based solely or in part on the SAVE response with the opportunity to use the User Agency's existing process to appeal the denial and to contact DHS-USCIS to correct their records prior to a final decision, if necessary; and

(q) Refrain from using SAVE, or assisting any person or entity, to comply with the employment eligibility verification requirements of section 274A of the Immigration and Nationality Act, 8 U.S.C. § 1324a.

(2) Monitoring and Compliance.

(a) Provide DHS-USCIS with the current e-mail, U.S postal service address, physical address, name and telephone number of the User Agency authorized representative for any notifications, questions or problems that may arise in connection with the User Agency's participation in SAVE and with notification of changes in the use of SAVE by the User Agency;

(b) Notify DHS-USCIS immediately whenever there is reason to believe a violation of this MOA has occurred;

(c) Notify DHS-USCIS immediately whenever there is reason to believe a breach of personally identifiable information has occurred as a result of User Agency action or inaction pursuant to OMB Memorandum M-17-12, "Preparing for and Responding to a Breach of Personally Identifiable Information" or successor guidance;

(d) Allow DHS-USCIS to monitor and review all records and documents related to the use, abuse, misuse, fraudulent use or improper use of SAVE by the User Agency, including, but not limited to original registrant or registered voter consent documents required by the Privacy Act, 5 U.S.C. § 552a or other applicable authority;

(e) Allow DHS-USCIS to conduct desk audits and/or site visits to review User Agency's compliance with this MOA and all other SAVE-related policy, procedures, guidance and law applicable to conducting verification and safeguarding, maintaining, and disclosing any data provided or received pursuant to this MOA;

(f) Allow DHS-USCIS to perform audits of User Agency's User ID use and access, SAVE Training Records, SAVE financial records, SAVE biographical information, system profiles and usage patterns and other relevant data;

(g) Allow DHS-USCIS to interview any and all User Agency SAVE system users and any and all contact persons or other personnel within the User Agency regarding any and all questions or problems which may arise in connection with the User Agency's participation in SAVE;

(h) Allow DHS-USCIS to monitor system access and usage and to assist SAVE users as necessary to ensure compliance with the terms of this MOA and the SAVE requirements by its authorized agents or designees;

(i) Take corrective measures in a timely manner to address all lawful requirements and recommendations on every written finding including but not limited to those of DHS-USCIS regarding waste, fraud, and abuse, and discrimination or any unauthorized use or misuse of the SAVE system or SAVE Program data, non-compliance with the terms, conditions and safeguards of this MOA, SAVE Program procedures or other applicable law, regulation or policy; and

(j) Consistent with applicable laws, regulations, and policies, and the availability of User Agency resources, User Agency will commit personnel and resources sufficient to support this MOA.

(3) Reimbursement.

(a) The User Agency certifies that, each fiscal year, it will obligate funds sufficient to reimburse DHS-USCIS under a current appropriation for the coming year.

(b) Pay the transaction charges reflected on the SAVE website, which along with methods of payment are subject to change upon prior written notification to the User Agency;

(c) Pay in full within 30 days of the invoice date. The User Agency will pay any applicable sales, use, excise, and like taxes, where required by law, that are stated on each invoice. Regardless of payment type, the User Agency will clearly indicate the User Agency High Level Identifier with remittance; and

(d) Promptly discuss and resolve issues and questions with DHS-USCIS regarding payments. Delinquent payments shall be handled in accordance with the Debt Collection and Improvement Act of 1996, 31 U.S.C. § 3701. Interest on all unpaid balances shall be charged at the rate of the current value of funds to the United States Treasury effective on the date of the invoice. The rate is the Treasury tax and loan rate. It is published annually or quarterly by the Secretary of the Treasury in the Federal Register and the Treasury Fiscal Requirements Manual Bulletins. Handling charges will accrue at

monthly rates of $5.00 for each of the first two months of delinquency and $10.00 for each month thereafter. In addition to interest and handling charges, if DHS-USCIS does not receive payment within 90 days of the invoice, 6% per annum additional interest will be assessed. Charges will be computed from the date of the invoice and will accrue monthly with the applicable interest and handling charges. In the case of any late payment, the amount received will be applied in this sequence: (1) to any accrued penalty and handling charges: (2) to any accrued interest; and (3) to outstanding principal. Failure to make timely payment may result in termination of services.

**V. POINTS OF CONTACT.**

**USCIS SAVE**
U.S. Citizenship and Immigration Services
Department of Homeland Security
Attn: SAVE Operations
5900 Capital Gateway Drive, Mail Stop 2620
Camp Springs, MD 20588-0009
Phone: (877) 469-2563 E-mail: SAVEregistration@uscis.dhs.gov

**USER AGENCY**
Office of the Ohio Secretary of State
Kimberly Burns
Assistant Secretary of State
180 S. Civic Center Drive
Columbus, OH 43215
Phone: (614) 995-5970 E-mail: kburns@ohiosos.gov.

**VI. OTHER PROVISIONS.**

A. MOA Responsibilities. Only authorized employees, agents, or designees of DHS-USCIS and the User Agency will carry out the requirements of this MOA. In carrying out these responsibilities, they will operate within the scope of applicable regulations, specifically delegated authorities, the program authorities and funding limitations and terms and conditions of this MOA. The User Agency will also ensure that all county and local officials responsible for voter registration use information obtained from SAVE and provided by the User Agency in accordance with the terms and conditions of this MOA.

B. Determining Benefit Eligibility. This MOA is limited to the provision of verification services. DHS-USCIS will verify limited citizenship and immigration status information, but will not recommend to the User Agency whether to issue the benefit. The DHS-USCIS response is not intended to be, and should not be construed as, an opinion on the part of DHS-USCIS or the United States regarding any right or benefit under any program administered by the User Agency. The User Agency has the sole responsibility to determine the registrant or registered voter's eligibility for the benefit.

C. Criminal Penalties.

(1) DHS-USCIS reserves the right to use information from the User Agency for any purpose permitted by law, including, but not limited to, the prosecution of violations of Federal administrative or criminal law.

(2) The User Agency acknowledges that the information it receives from DHS-USCIS is governed by the Privacy Act of 1974, 5 U.S.C. § 552a(i)(1), and that any person who obtains this information under false pretenses or uses it for any purpose other than as provided for in this MOA may be subject to criminal penalties.

D. Third Party Liability.

(1) Each party to this MOA shall be solely responsible for its own defense against any claim or action by third parties arising out of or related to the execution and/or performance of this MOA, whether civil or criminal, and retain responsibility for the payment of any corresponding liability.

(2) Nothing in this MOA is intended, or should be construed, to create any right or benefit, substantive or procedural, enforceable at law by any third party against the United States, its agencies, officers, or employees or the User Agency.

E. Disputes. Disagreements on the interpretation of the provisions of this MOA that cannot be resolved between the SAVE and the User Agency Point of Contact should be provided in writing to the authorized officials at both agencies for resolution. If settlement cannot be reached at this level, the disagreement will be elevated to the next level in accordance with DHS-USCIS procedures for final resolution.

F. Conflicts. This MOA constitutes the full agreement on this subject between DHS-USCIS and the User Agency. Any inconsistency or conflict between or among the provisions of this MOA, will be resolved in the following order of precedence: (1) this MOA and (2) other documents incorporated by reference in this MOA (for example, transaction charges).

G. Severability. Nothing in this MOA is intended to conflict with current law or regulation or the directives of DHS, DHS-USCIS, or the User Agency. If a term of this MOA is inconsistent with such authority, then that term shall be invalid but, to the extent allowable, the remaining terms and conditions of this MOA shall remain in full force and effect. In the event of a conflict that prevents either party from fulfilling its obligations, this MOA may be immediately canceled without providing the 30 day notice period referenced in Section IX.

H. Assignment. The User Agency may not assign this MOA, nor may it assign any of its rights or obligations under this MOA. To the extent allowable by law, this MOA shall inure to the benefit of, and be binding upon, any successors to DHS-USCIS and the User Agency without restriction.

I. Waiver. No waiver by either party of any breach of any provision of this MOA shall constitute a waiver of any other breach. Failure of either party to enforce at any time, or from time to time, any provision of this MOA shall not be construed to be a waiver thereof.

J. Compliance with Other Laws. Nothing in this MOA is intended or should be construed to limit or affect the duties, responsibilities, and rights of the User Agency under the National Voter Registration Act, 52 U.S.C. § 20501 et seq., as amended; the Help America Vote Act, 52 U.S.C. § 20901 et seq., as amended; the Voting Rights Act, 52 U.S.C. § 10301 et seq., as amended; and the Civil Rights Act, 52 U.S.C. § 10101 et seq., as amended.

## VII. EFFECTIVE DATE.

This MOA shall be effective when the DHS-USCIS authorized official and User Agency authorized official have both signed the MOA. This MOA shall continue in effect unless modified or terminated in accordance with the provisions of this MOA.

## VIII. MODIFICATION.

A. This MOA is subject to periodic review by DHS-USCIS, its authorized agents or designees, and, if necessary, periodic modification and/or renewal to assure compliance with current law, policy, and standard operating procedure(s). This MOA and its addenda constitute the complete MOA between the parties for its stated purpose, and no modification or addition will be valid unless entered into by mutual consent of both parties evidenced in writing and signed by both parties and appended to this agreement.

B. DHS-USCIS may accomplish unilateral administrative modifications to revise transaction charges, points of contact and methods of payment, effective upon prior written notification to the User Agency. Either party may accomplish a unilateral administrative modification to change POC information. A written bilateral modification (agreed to and signed by authorized officials of both parties) is required to change any other term of this MOA.

## IX. TERMINATION.

Either party may terminate this MOA at any time by providing 30 days written notice of intent. DHS-USCIS, when feasible, will consult with the User Agency and attempt to reconcile issues before terminating this MOA. Notwithstanding any other provision in the MOA, DHS-USCIS may suspend or terminate this MOA, and thereby the Agency's use of SAVE, without prior notice if deemed necessary because of a requirement of law or policy, upon a determination by DHS-USCIS that there has been a breach of system integrity or security by the User Agency or a failure by the User Agency to comply with established procedures or legal requirements, including but not limited to failure to pay.

Written notices shall be sent to the addresses of the POCs listed herein and shall be effective upon receipt. Either party may change its POC by written notice to the other party.

The foregoing, in conjunction with the referenced and incorporated addendums, constitutes the full agreement on this subject between DHS-USCIS and the User Agency. This MOA supersedes all previous agreements governing the provision of verification services. Those agreements are explicitly acknowledged to be null and void.

The undersigned represent that they are authorized to enter into this MOA on behalf of DHS-USCIS and the User Agency, respectively.

STEVEN P YONKERS Digitally signed by STEVEN P YONKERS Date: 2024.07.02 13:11:28 -04'00'

**Steven P. Yonkers**
**Chief, SAVE Programs and Strategies Branch**
**Verification Division**
**Immigration Records and Identity Services**
**U.S. Citizenship and Immigration Services**
**Department of Homeland Security**

07/02/2024

**Date**

Kim Burns Digitally signed by Kim Burns Date: 2024.06.27 16:17:51 -04'00'

**Kimberly Burns**
**Assistant Secretary of State**
**Office of the Secretary of State**
**State of Ohio**

06/27/2024

**Date**

# Exhibit D

## Template SAVE Report

| First Name / Given Name* | Middle Name | Last Name / Surname / Family Name* | Date of Birth* | A-Number / USCIS Number** |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| Naturalization or Citizenship Certificate Number** | Social Security Number** | Custom Agency Reference | Original File Name | Original Line # | Case # |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| Created At | Initial Verification Response | Initial COA Code | Initial Grant Date | Initial Sponsorship Information | Initial Admit Until Date |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| Additional Verification Response | Additional Comments | Additional Verification Response Date | Additional COA Code | Additional Grant Date |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| Additional Sponsorship Information | Additional Admit Until Date | Third Step Verification Response | Third Step Comments |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| Third Step Verification Response Date | Third Step COA Code | Third Step Grant Date | Third Step Sponsorship Information | Third Step Admit Until Date |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| 1st Amendment Verification Response | 1st Amendment Comments | 1st Amendment Verification Response Date | 1st Amendment COA Code |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| 1st Amendment Grant Date | 1st Amendment Sponsorship Information | 1st Amendment Admit Until Date | 2nd Amendment Verification Response |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| 2nd Amendment Comments | 2nd Amendment Verification Response Date | 2nd Amendment COA Code | 2nd Amendment Grant Date |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| 2nd Amendment Sponsorship Information | 2nd Amendment Admit Until Date | Error Type | Error Description |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

# Exhibit E

## Template County Noncitizen List

| SOS_VOTERID | County_Name | COUNTY_ID | LAST_NAME | FIRST_NAME | MIDDLE_NAME | SUFFIX | DATE_OF_BIRTH | BMV_ID | VOTER_STATUS | REGISTRATION_DATE | RESIDENTIAL_ADDRESS1 | RESIDENTIAL_CITY | RESIDENTIAL_ZIP | SAVE_OUTPUT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |