**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

LEAGUE OF WOMEN VOTERS OF OHIO; COUNCIL ON AMERICAN-ISLAMIC RELATIONS-NORTHERN OHIO,

Plaintiffs,

v.

FRANK LAROSE, in his official capacity as the Ohio Secretary of State,

Defendant.

Case No.: 2:26-CV-00177-MHW-SCS

Judge Watson
Magistrate Judge Shimeall

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

## INTRODUCTION

This action challenges whether portions of Ohio Senate Bill 293 (2025) (S.B. 293) violate provisions governing voter list maintenance under the National Voter Registration Act and the Due Process Clause of the Fourteenth Amendment. The Secretary's motion for a protective order, whether framed under the standard of Fed. R. Civ. P. 26(c) or of Rule 37, presents two simple questions regarding two categories of document requests made by the Plaintiffs:

*First*, are Plaintiffs' requests relevant to the action? The answer is yes. Plaintiffs request documents identifying the universe of Ohio voters flagged as either unverified or as non-citizens by the data systems that S.B. 293 mandates the Secretary use for list maintenance, and identifying those voters ultimately sent to County Boards of Elections for immediate removal. These documents are relevant in determining whether S.B. 293 discriminates against naturalized citizens, identifies citizens for removal, and engages in a systemic rather than individualized removal of voters in the 90-day period before federal elections when the chance to cure any error diminishes by the day. Withholding this information would unfairly obstruct Plaintiffs' efforts to pursue their claims. As for documents reflecting recent pre-S.B. 293 use of SAVE and the Bureau of Motor Vehicles (BMV) database, the Secretary himself categorizes those processes as only "updated" by S.B. 293, Secy's Mot. to Dismiss ("MTD"), ECF No. 10 at PAGEID 96, to "merely increase[ ] the frequency of the checks and codif[y] the [existing] use of the SAVE database," *id.* at PAGEID 114. To the extent those same systems improperly identified citizens as non-citizens even under the more limited process prior to S.B. 293, this evidence would be probative of the risks presented under S.B. 293, especially given its increased use and removal of several safeguards.

*Second*, has the Secretary demonstrated specific facts showing that some the requested information would be create "annoyance, embarrassment, oppression, or undue burden or

expense" for the Secretary under Rule 26(c)(1)? The answer is no. At the outset, and consistent with their efforts to compromise as indicated during the discovery conference, Plaintiffs clarify that they do not seek SAVE Reports "listing available citizenship data for each of Ohio's 8 million registered voters," Def.'s Mot. for Protective Order ("P.O. Mot."), ECF No. 49, PAGEID 497, or *any* information revealing dates of birth, Social Security numbers or portions thereof, or voters' alien, USCIS, naturalization, citizenship, or driver's license numbers. Plaintiffs seek only basic information about the much more limited category of individuals who SAVE either identifies as noncitizens or cannot conclusively identify, as well as the lists of individuals actually sent to Boards of Elections for removal,[1] eliminating any serious arguments about burden.

Nor does the Ohio public-records law invoked help establish undue burden or oppression in producing these limited voter lists. Not only is a protective order in place, but state public-records law does not govern what is discoverable in this federal-question case. *See Hancock v. Dodson*, 958 F.2d 1367, 1372–73 (6th Cir. 1992). Similarly, vague references to federal privacy laws provide no support without any explanation of how the production called for here might violate them. The Secretary offers only the bald accusation that Plaintiffs intend to "unmask" the individuals the Secretary has mandated removed and "attempt to involve them in this litigation without their consent"—an evidence-free assertion that ignores not only the Protective Order in place, but also that "unmasking" or harassing Ohio voters would run counter to Plaintiffs' goal of ensuring that citizens are not improperly purged.

The Court should deny the motion under the principles of Rule 26 or Rule 37.

[1] Of this category of objected-to Requests, Plaintiffs also seek communications with individuals identified as noncitizens using SAVE or the BMV database, RFPs 7 and 14, and reports identifying noncitizens based on BMV data, RFP 12, but the Secretary's motion does not appear to seek a Protective Order regarding these requests; only SAVE Reports and County Noncitizen Lists.

## BACKGROUND

On June 22, 2026, Plaintiffs propounded Requests for Production (RFPs) on the Secretary. *See* Pls.' First Set of RFPs, ECF No. 49-2 at PAGEID 588–97. The Secretary served his responses on August 19, producing eighteen documents and objecting outright to several RFPs on grounds of relevance, undue burden, and lack of proportionality to the needs of the case. *See* Def.'s Resps. to Pls.' First Set of RFPs, ECF No. 49-1 at PAGEID 529–54.

The parties met and conferred on September 17, 2026. Discovery Conf. Joint Submission, ECF No. 49-2 at PAGEID 581. At that conferral, counsel for the Secretary contended that none of the voter data sought by Plaintiffs was relevant to their claims and declined to confer as to burden or redactions. *See id.* at PAGEID 581, 585–86. In the Parties' Joint Submission to the Court, the Secretary added an argument that Plaintiffs seek "information made confidential by statute" which would "jeopardize ongoing criminal investigations and risk harassment." *See id.* at PAGEID 584.

On October 1, 2026, the Court conducted a discovery conference. *See* Order, ECF No. 47. Concerning voter list information, the Secretary largely abandoned his relevance arguments and "primarily argued that Plaintiffs' request was disproportionate to the burden it would impose because disclosure could expose confidential voter information," but "the Court preliminarily opined that the voter information Plaintiffs seek is relevant and proportional to the needs of the case," given the protective order in place. *Id.* at PAGEID 488. The Court preliminarily found that the question of the relevance of Plaintiffs' requests concerning limited pre-S.B. 293 processes also involving SAVE and the BMV Database presented a "close question." *Id.*

## ARGUMENT

"The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). Under Rule 26,

"[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[]" and need not be admissible. Fed. R. Civ. P. 26(b)(1). In discovery, courts do not limit relevance "to the precise issues set out in the pleadings or to the merits of the case." *In re Heparin Prods. Liab. Litig.*, 273 F.R.D. 399, 406 (N.D. Ohio 2011) (citation omitted). Rather, requests for production are "relevant if there is any possibility that the information may be relevant to the general subject matter of the action." *Id.*

If the propounding party shows relevance, the resisting party must show "good cause" not to produce those documents. Fed. R. Civ. P. 26(c)(1). "Good cause exists if specific prejudice or harm will result from" production. *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 236 (6th Cir. 2016). Thus, "one of Rule 26(c)(1)'s enumerated harms must be illustrated 'with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012) (citation omitted).

The Secretary takes issue with the Court's direction to file a discovery-related motion under Rule 26 rather than directing Plaintiffs to file a motion to compel under Rule 37. *See* Def.'s Mem. in Supp. of P.O. Mot., ECF No. 49 at PAGEID 494, 495.[2] But as shown below, Plaintiffs prevail under either standard, making the Secretary's procedural objection irrelevant.

## I. Documents Concerning Purported Non-Citizens in the BMV database and SAVE Are Relevant and Production Imposes No Undue Burden or Other Good Cause for Relief.

### A. <u>The Discovery Sought is Highly Relevant to Plaintiffs' Claims.</u>

The SAVE reports and county noncitizen lists that Plaintiffs seek are relevant to Plaintiffs' claims for several reasons.

---

[2] The Secretary did not object during the conference when the Court explained the procedure or after it issued its order granting the Secretary permission to move for a protective order.

First, the information Plaintiffs seek from the SAVE reports and county noncitizen lists is relevant in determining whether naturalized citizen voters are significantly overrepresented among the voters made to provide documentary proof of citizenship or removed from voter rolls and referred for criminal investigation under S.B. 293. The Parties disagree about whether Plaintiffs must show discriminatory intent under Section 8(b) of the NVRA, but even if Defendant were correct, "evidence of a policy's disparate impact may be probative in determining whether the policymaker harbored a discriminatory intent." *Spurlock v. Fox*, 716 F.3d 383, 400 (6th Cir. 2013) (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977)). Indeed, numerous courts have permitted discovery of similar voter information under Section 8(b) claims. *See, e.g.*, *Va. Coal. for Immigrant Rights v. Beals*, No. 1:24-cv-1778 (E.D. Va. Oct. 10, 2024), ECF No. 72 (ordering expedited discovery to include information on individual voters affected by Virginia's removal program); *Ala. Coal. for Immigrant Justice, et al., v. Allen*, No. 2:24-cv-1254, 2024 WL 4510476, (N.D. Ala., Oct. 1, 2024), ECF No. 47 (same).

Second, the documents sought hold additional relevance to the parties' dispute about whether S.B. 293 sets up a program of systemic voter removal and creates risk of erroneous deprivation of the right to vote, which bear on Plaintiffs' Section 8(c) and due process claims. Compl. ¶¶ 121–26. S.B. 293 directs that voters who are identified as noncitizens through outdated or inaccurate data in the SAVE and BMV systems shall "promptly" have their voter registrations canceled by their county board of elections, Compl. ¶ 82 (citing § 3503.152(B)(1)), without requiring any warning, notice, or individualized review by the counties. The Secretary has claimed that, despite the clear statutory language, he is providing individualized review and notice to voters. MTD, ECF No. 10 at PAGEID 107–08, 113. But the declaration of Director Katz states that the only "individualized" review involves documents in the BMV database, Katz Decl.

¶ 8, ECF No. 49-1 at PAGEID 507, which contain stale data that could misidentify a naturalized citizen as a noncitizen, Compl. ¶¶ 3, 44, 100, 116–19. These disputes lie at the heart of the case.

Third, the discovery sought is necessary for the injunctive relief Plaintiffs seek in this case, which requires a showing of irreparable harm. *See, e.g.*, *Int'l Union of Painters & Allied Trades Dist. Council No. 6 v. Smith*, 148 F.4th 365, 371 (6th Cir. 2025). Where Plaintiffs bring claims under Section 8(b) of the NVRA contending that "election laws are burdening naturalized . . . citizens," documents with the number of such "citizens who have been flagged pursuant to these election laws are relevant to these allegations." *League of Women Voters of Ind. v. Morales*, No. 1:25-CV-02150-MPB-MJD, 2026 WL 66997, at *5 (S.D. Ind. Jan. 8, 2026).

B. The Secretary Shows No Undue Burden or Other Good Cause to Resist Discovery.

None of the Secretary's objections to producing SAVE data or county noncitizen lists meet his burden under Rule 26(c) to show that "specific prejudice or harm will result from the absence of a protective order," *In re Ohio Execution Protocol Litig.*, 845 F.3d at 236, or Rule 37 to show undue burden, *see Delta T, LLC v. Williams*, 337 F.R.D. 395, 398 (S.D. Ohio 2021).

As to the SAVE lists, the Secretary opposes the requests based on undue burden because he believes responding requires producing "confidential information for all 8 million registered voters in this State," as well as based on purported conflicts with "state and federal confidentiality laws." P.O. Mot. at PAGEID 497–98. On the former, Plaintiffs clarify that they do not seek full SAVE reports with all registered voters—only the portions of the spreadsheets containing voters flagged as non-citizens or whose status could not be determined, and with personally identifiable information redacted. That alone should resolve the Secretary's undue burden arguments.

The Secretary also cannot show specific harm or undue burden based on his broad assertion that providing redacted portions of SAVE reports under an agreed-upon Protective

Order somehow violates state or federal confidentiality laws. To the extent that the Secretary relies on Ohio's public-records law, that does not control in this federal-question case. *See Hancock*, 958 F.2d at 1372–73. He cannot identify how providing redacted excerpts of SAVE reports under a Protective Order would even implicate Ohio Rev. Code § 3503.13(A)(1), which only governs which voter registration records are "subject to disclosure under" Ohio's public-records law—and even then, applies only to categories of personally identifying information that Plaintiffs do not seek. He also now asserts that production would "force the Secretary to violate the confidentiality provisions" in the Memorandum of Agreement between the Secretary and the Department of Homeland Security). P.O. Mot. at PAGEID 498. He offers no facts or argument, however, as to how this limited production might do so, nor could he—that agreement merely requires that "[r]esponses to third party requests for such information should be consistent with federal law and DHS policy, including but not limited to the provisions of the Freedom of Information Act, 5 U.S.C. § 552." SAVE Agreement, ECF No. 49-1 at PAGEID 560.

As to the county noncitizen lists, the Secretary asserts purported concerns about Plaintiffs harassing removed voters and release of confidential information relating to criminal investigations and potential criminal activity, even though this would violate the Protective Order in the case. P.O. Mot. at PAGEID 498–500. On the former, the Secretary, with no basis, accuses Plaintiffs of wanting to "unmask these individuals, gain their confidential information, and attempt to involve them in this litigation without their consent," despite Plaintiffs' status as trusted organizations that advocate on behalf of voters and to which naturalized citizen voters turn when navigating confusing, fear-inducing communications from the Secretary around their eligibility. Compl. ¶¶ 45–46. It would be contrary to Plaintiffs' goals to harass or publicly expose unwilling list members. Rather, Plaintiffs seek only the ability to obtain basic information "to

show that the election laws are creating the harm that they allege in the Complaint." *League of Women Voters of Ind.*, 2026 WL 66997, at *5. The ability to contact voters, who could be witnesses *if they are willing*, is part and parcel of normal discovery.

The Secretary's objections concerning interference with ongoing criminal investigations also have no merit. Plaintiffs do not seek any information regarding the investigations themselves, and any basic information regarding voters on the county noncitizen list would remain nonpublic under the Protective Order. The authority the Secretary cites does not strengthen his argument. *McGoy v. Ray* involved information classified as "confidential state secrets," a level of secrecy that is simply not present here. 164 F. App'x 876, 878 (11th Cir. 2006). In *Public Interest Legal Foundation, Inc. v. North Carolina State Board of Elections*, the Court considered the relationship of the requested productions to a potential criminal investigation but notably did not bar discovery, explaining that even the risk of the identities of those facing prosecution becoming public—which is prevented here due to the Protective Order—"does not render the requested documents affiliated with potential noncitizens immune from disclosure under the plain language of the NVRA." 996 F.3d 257, 267–69 (4th Cir. 2021). Nor should it here, where the goals of discovery strongly support access to relevant evidence.

## II. The Text of S.B. 293 and the Secretary's Own Representations Prove the Relevance and Proportionality of Plaintiffs' Requests for Limited Pre-S.B. 293 Materials.

As discussed above, the scope of discovery is "quite broad," *Lewis*, 135 F.3d at 402, and "not limited to the most relevant information or most direct evidence," *Fish v. Kobach*, 321 F.R.D. 395, 399–400 (D. Kan. 2017). Plaintiffs' narrow requests for some categories of pre-S.B. 293 documents bear directly on Plaintiffs' claims, and the Secretary's contentions in his Motion to Dismiss only emphasize the need for this discovery. *See* MTD, ECF No. 10.

Since 2023, Ohio law has required the Secretary to use the BMV database to conduct "an

annual review of the statewide voter registration database to identify persons who appear not to be United States citizens." Ohio Rev. Code § 3503.152 (2023). Beginning in March 2025, the Secretary began using SAVE to identify and remove alleged noncitizens "under a settlement agreement with the U.S. Department of Homeland Security." MTD, ECF No. 10 at PAGEID 96. Therefore, before S.B. 293 went into effect, the Secretary had a year of experience using the SAVE database for list maintenance, and almost three years of using the BMV database for this purpose.

Plaintiffs seek discovery concerning the Secretary's and voters' experiences with these same data systems that now provide the foundation of the voter-purge regime imposed by S.B. 293. Both before and after S.B. 293, the Secretary relied on SAVE and the BMV database to identify potential noncitizen registrants for potential removal. But S.B. 293 raises the stakes by: (i) mandating at least monthly rather than annual checks using these systems (ii) eliminating the prohibition on removal under this program in the 90 days before a federal election; (iii) expanding the pool of voters subject to removal from individuals who submitted noncitizen documentation to the BMV after registering to vote, to any voter who appears as a noncitizen in the BMV database and SAVE system, even if they submitted noncitizen documentation well before registering; and (iv) removing the statute's notice protections, and now requiring the Secretary to transmit voter lists to county boards for immediate cancellation. *Compare* Ohio Rev. Code § 3503.152 (2023), *with* Ohio Rev. Code § 3503.152 (2026). Information about these processes, which remain the backbone of S.B. 293, may reveal: (a) that systematic problems in the processes were already apparent and leading to the false identification of citizens as non-citizens; and/or (b) that S.B. 293 has supercharged these discriminatory and illegal results by mandating more aggressive use of these processes with fewer safeguards. Moreover, whether the individuals who were incorrectly identified as non-citizens before S.B. 293 had greater notice and opportunity to

respond than those identified pursuant to the S.B. 293 scheme bears directly on Plaintiffs' due process claim as "actually asserted" in the Complaint. *See* P.O. Mot. at PAGEID 501.

The Secretary's attempt to use conflict-preemption framing does not advance his arguments. Beyond ignoring that discovery requests are "relevant if there is any possibility that the information may be relevant to the general subject matter of the action," *In re Heparin Prods. Liab. Litig.*, 273 F.R.D. at 406, courts treat "Elections Clause legislation [like the NVRA] differently," *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 14 (2013). Elections Clause legislation like the NVRA "*necessarily* displaces some element of a pre-existing legal regime erected by the States, . . . . the reasonable assumption is that the statutory text accurately communicates the scope of Congress's pre-emptive intent." *Id.* Moreover, if Plaintiffs identify evidence that the databases that form the backbone of S.B. 293 were already improperly flagging citizens for removal, this would lend significant support to their due process claim.

As the Secretary himself has admitted, "S.B. 293 does not materially change the process for reviewing the statewide registration database vis-à-vis due process. It merely increases the frequency of the checks and codifies the use of the SAVE database" that he was already conducting. MTD, ECF No. 10 at PAGEID 114. He cannot downplay the changes imposed by S.B. 293 to seek dismissal on one hand and then turn around to now oppose discovery by asserting that "[b]efore S.B. 293, there was no directed use of the SAVE and BMV databases and, as a result, pre-S.B. 293 discovery cannot be relevant." P.O. Mot. at PAGEID 502.

## CONCLUSION

The Court should deny the Secretary's Motion for a Protective Order. The information sought is relevant and neither unduly burdensome nor oppressive.

Dated: October 23, 2026

Respectfully Submitted,

/s/ *Freda J. Levenson*________
Freda J. Levenson (0045916)
(*Trial Attorney*)
Amy Gilbert (0100887)
ACLU OF OHIO FOUNDATION, INC.
4506 Chester Avenue
Cleveland, Ohio 44103
(216) 541-1376
flevenson@acluohio.org
agilbert@acluohio.org

David J. Carey (0088787)
Carlen Zhang-D'Souza (0093079)
ACLU OF OHIO FOUNDATION, INC.
1108 City Park Avenue, Suite 203
Columbus, Ohio 43206
(380) 215-1972
dcarey@acluohio.org
czhangdsouza@acluohio.org

Davin Rosborough*
Ethan Herenstein*
Nina Nayiri McKay*
Sophia Lin Lakin*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
drosborough@aclu.org
eherenstein@aclu.org
nmckay@aclu.org
slakin@aclu.org

Anna Baldwin*
Sejal Jhaveri (NY Bar. # 5396304)
Kate Hamilton*
Kate Uyeda*
CAMPAIGN LEGAL CENTER
1101 14th Street NW, Suite 400
Washington, DC 20005
(202) 736-2200
abaldwin@campaignlegalcenter.org
sjhaveri@campaignlegalcenter.org
khamilton@campaignlegalcenter.org
kuyeda@campaignlegalcenter.org

Patricia Yan*
Kelli Slater*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
915 15th Street NW
Washington, DC 20005
(212) 549-2500
pyan@aclu.org
kslater@aclu.org

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2026, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Davin Rosborough*________
Davin Rosborough